UNITED STATES, Appellee,

v.

Francis P. SCOTT, First Lieutenant,
U.S. Marine Corps, Appellant.

No. 48202.
NMCM 83–4045.

U.S. Court of Military Appeals.

Feb. 24, 1986.

For Appellant: *Lieutenant Roman A. Chojnacki*, JAGC, USNR (argued); *Lieutenant Colonel M.W. Lucas*, USMC and *Lieutenant Brian M. Madden*, JAGC, USNR (on brief); *Lieutenant Commander Alvin L. McDonald*, JAGC, USN.

For Appellee: *Lieutenant Darlene M. Connelly*, JAGC, USN (argued); *Captain W. J. Hughes*, JAGC, USN and *Captain David B. Stratton*, USMCR (on brief).

### Opinion of the Court

EVERETT, Chief Judge:

A general court-martial consisting of a military judge alone tried appellant on Charge I with three specifications alleging violations of Article 133, Uniform Code of Military, 10 U.S.C. § 933; and on Charge II with five specifications preferred under Ar-

ticle 134, UCMJ, 10 U.S.C. § 934. Consistent with his pleas, Scott was convicted of three specifications under each charge. The specifications under the two charges are parallel. Thus, specification 1 of Charge I sets forth certain acts which constituted conduct unbecoming an officer and gentleman; and specification 1 of Charge II describes the same acts but alleges that, in committing them, appellant had taken "improper liberties ... with the intent to gratify ... [his] sexual desires."

The military judge sentenced Scott to dismissal from the Marine Corps, confinement for 18 months, total forfeitures, and loss of all lineal precedence. The convening authority approved the findings and the sentence, except for the confinement; and in a *per curiam* opinion, the Court of Military Review affirmed. This Court granted review on two issues assigned by appellant and three specified by the Court.[1] 18 M.J. 10.

### I

The three findings of guilty under each charge concern these three incidents involving girls under the age of 16 years: (a) On March 18, 1983, wrongful display to three girls of "a magazine containing material appealing to prurient interest" and wrongful exposure of "his private parts to" them; (b) on March 28, 1983, wrongful exposure of "his private parts to" two other young

1. This opinion will treat these issues in the following order:

#### I
WHETHER THE FINDINGS OF GUILTY TO SPECIFICATIONS 1, 2 and 3 OF CHARGE II ARE MULTIPLICIOUS WITH THOSE OF SPECIFICATIONS 1, 2 AND 3 OF CHARGE I (CONDUCT UNBECOMING AN OFFICER).

#### II
WHETHER SUBJECT MATTER JURISDICTION EXISTED OVER THE OFFENSES ALLEGED IN SPECIFICATION 1 OF CHARGE I (INDECENT EXPOSURE AND INDECENT LANGUAGE IN THE CIVILIAN COMMUNITY ALLEGED AS CONDUCT UNBECOMING AN OFFICER AND A GENTLEMAN) AND SPECIFICATION 1 OF CHARGE II (INDECENT EXPOSURE ALLEGED AS AN IMPROPER LIBERTIES VIOLATION OF THE GENERAL ARTICLE).

#### III
WHETHER THE OFFENSE OF IMPROPER LIBERTIES WITH A CHILD IS PLEADED UNDER SPECIFICATION 3 OF CHARGE I AND SPECIFICATION 3 OF CHARGE II.

#### IV
WHETHER THE ULTIMATE OFFENSE PLEADED BY SPECIFICATION 2 OF CHARGE I IS INDECENT EXPOSURE, A MINOR DISORDER, OR IMPROPER ACTS WITH A CHILD. [*SEE UNITED STATES V. SANCHEZ*, 11 U.S.C.M.A. 216, 221, 29 C.M.R. 32, 37 (1960)].

#### V
WHETHER THE MILITARY JUDGE IMPEACHED HIS OWN SENTENCE IN THE CASE *SUB JUDICE*.

girls; and (c) on April 1, 1983, showing two girls "a magazine designed to appeal to the prurient interest, to wit: a pornographic magazine containing pictures of nude women."

 Under the rationale of our precedents, we conclude that each of these incidents could not be enlarged into two separate crimes merely by alleging in one specification that the conduct was unbecoming an officer and in another that it constituted "improper liberties ... with the intent to gratify the sexual desires of the" accused. *See, e.g., United States v. Timberlake,* 18 M.J. 371 (C.M.A.1984); *United States v. Rodriquez,* 18 M.J. 363 (C.M.A.1984). The most complete way to solve the multiplicity problem in this case would be to consolidate each pair of parallel specifications into a single specification alleging an Article 133 violation. However, because the Article 134 specifications contain more descriptive allegations as to Scott's *mens rea,* the simplest solution is to set aside the convictions under Charge I, dismiss that Charge, and affirm the findings under Charge II. We are satisfied that appellant was not prejudiced as to sentence by this multiplicity.

## II

The offenses of March 28 and April 1 occurred at Camp Lejeune, and there is no question about court-martial jurisdiction over them. *Relford v. Commandant,* 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971). However, the incident on March 18 took place at Jacksonville, North Carolina; and this Court specified an issue as to the court-martial's subject-matter jurisdiction.

 Of course, at trial appellant pleaded guilty; and, upon inquiry by the military judge, his counsel specifically represented:

I have studied this matter in some detail and it is my professional opinion that based on the attendant circumstances and all the other facts surrounding this case that there is no real subject matter problem. And we certainly don't raise any kind of issue in that regard.

This concession and the plea of guilty are not conclusive as to subject-matter jurisdiction, but they justify drawing every inference against appellant and in favor of the court's jurisdiction. *United States v. Lockwood,* 15 M.J. 1 (C.M.A.1983).

 Furthermore, although we have not accepted a theory of "pendent jurisdiction," the pendency of other related charges for trial by the same court-martial calls into play certain considerations which tend to support jurisdiction. *Id.* at 7. Here the offenses are closely related with respect to time and place, and are similar in many ways. Indeed, the similarity is so great that evidence of the off-post offense might be admissible to help prove commission of the on-post offenses. *See* Mil.R.Evid. 404(b), Manual for Courts-Martial, United States, 1969 (Revised edition). Moreover, as was specifically alleged concerning the off-post offense, "there is a military interest in having all the alleged offenses tried by court-martial at the same time so that they can be disposed of together without delay."

Other factors relied on by the Government to establish court-martial jurisdiction were these: (1) the on-base and off-base offenses were "parts of the same course of conduct"; (2) "the reputation and morale of the Marine Corps" were "injured"; (3) the two female victims were "daughters of a retired Marine Corps noncommissioned officer"; (4) "Jacksonville, North Carolina, is immediately contiguous to Camp Lejeune"; (5) Scott "committed this offense while he was only briefly away from his place of duty"; and (6) the Marine Corps "has a higher interest in disciplining officer misconduct as alleged than does the civilian sector of society."

The existence of these circumstances is indeed persuasive as to the presence of service-connection. Moreover, appellate government counsel contend that Scott's status as an officer established jurisdiction because *all* officer misconduct is by its very nature service-connected. Under this view, just as offenses committed by servicemembers on post or overseas are al-

ways subject to military jurisdiction, *see, e.g., Relford v. Commandant, supra,* so also are any misdeeds by an officer—by reason of his commissioned status—always subject to court-martial jurisdiction.

We recognize that officers have a special role in the armed services. This is attested to by the very existence of Article 133, which makes special provision for the punishment of officer misconduct. Moreover, our precedents have acknowledged the unique responsibility of officers. *United States v. Means,* 10 M.J. 162 (C.M.A.1981). Additionally, because of his position an officer's misconduct is likely to receive special publicity and thereby to result in injury to the reputation of the service to which he belongs. However, in this case we need not decide whether it would be consistent with *O'Callahan v. Parker,* 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969), to hold that an officer's misdeeds—no matter where or when they occur—are subject automatically to trial by court-martial because a variety of factors—*including* his commissioned status—convince us that Scott's off-post misconduct was service-connected.

### III

According to the allegations on the charge sheet, Scott took "improper liberties with" two females under 16 years of age "by exposing to them his private parts with the intent to gratify ... [his] sexual desires." Appellant contends that these allegations charge "indecent exposure" for which only 6 months' confinement is authorized—not indecent liberties with a child under the age of 16 for which 7 years' confinement and a dishonorable discharge (dismissal) are authorized. We disagree.

■ Many years ago in *United States v. Brown,* 3 U.S.C.M.A. 454, 13 C.M.R. 10 (1953), this Court held that the offense of taking indecent liberties with a child may be committed without any physical contact or touching, even though the same act also

may constitute indecent exposure. In that instance, we upheld a conviction for taking indecent liberties with two children "by willfully and wrongfully exposing in an indecent matter to them in public, his penis with intent to gratify ... [his] sexual desires." *Id.* at 455, 13 C.M.R. at 11. The difference between the specification in that case and the one here is insignificant. Accordingly, under the authority of *Brown* —a precedent which we see no reason to disturb—we uphold the sufficiency of the specification.[2]

### IV

On April 1, 1983, Scott took "improper liberties with" two "females under the age of 16 years, by showing to them a magazine designed to appeal to the prurient interest, to wit: a pornographic magazine containing pictures of nude women, with the intent to gratify ... [his] sexual desires." Appellate defense counsel observed in their brief that they had "been unable to find any case law, military or civilian, which supports the proposition that showing a 'pornographic' magazine to a minor is an indecent liberty."

In response, the Government has cited no case directly on point. However, as already noted, it has long been established that the offense of taking indecent liberties with a minor does not require physical contact. Thus, one who exposes his private parts to the minor with the requisite intent to gratify sexual desires can be properly convicted.

■ The purpose of punishing the taking of indecent liberties with children "is to protect children under a certain age from those acts which have a tendency to corrupt their morals." *United States v. Brown, supra* at 457, 13 C.M.R. at 13; *see United States v. Knowles,* 15 U.S.C.M.A. 404, 35 C.M.R. 376 (1965); *United States v. Childers,* 31 C.M.R. 747 (A.F.B.R.), *pet. denied,* 13 U.S.C.M.A. 686, 32 C.M.R. 472

---

2. *Cf. State v. Turman,* 52 N.C.App. 376, 278 S.E.2d 574 (1981); *People v. Thingvold,* 66 Ill. App.3d 1002, 23 Ill.Dec. 695, 384 N.E.2d 489

(1978); *State v. Edwards,* 283 So.2d 231 (La. 1973); *Chesebrough v. State,* 255 So.2d 675 (Fla. 1971).

(1962). Moreover, "the injury to the child and the consequential damage to society from the performance of a depraved act in his presence are just as great as when there is an actual physical contact between the performer and the child." *United States v. Brown, supra,* 3 U.S.C.M.A. at 457, 13 C.M.R. at 13. We can perceive no reason to differentiate between "a depraved act" which consists of exposing one's own private parts to a child and similar "acts" which involve (a) displaying to the child a picture of one's own genitals, (b) displaying to the child a third person whose private parts are uncovered, or (c) displaying to the child a picture of the third person's private parts. The impact on the victim can be the same in any of these situations. The *mens rea* of the offender is the same—namely, to gratify his own sexual desires. Even though we are unaware of a case where an accused has been convicted of taking indecent liberties because of showing a child pornographic[3] pictures, the policy of protecting the morals of children is so strong that we believe it permits such result.[4]

Of course, we are aware that appellant had a first amendment right to communicate with others—whether by speech, document, or by exhibition of pictures. However, the right to communicate to children of tender ages is less extensive than the right to communicate to adults. *New York v. Ferber,* 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982). Thus, in view of the allegations against Scott and his plea of guilty, we find it unnecessary to examine any first amendment issue that might otherwise have been present.

V

After announcing the sentence and before discussing with appellant the sentence

limitations of the pretrial agreement, the military judge remarked:

I want to state for the record and go on record saying that although the punishment that I have adjudged for the offenses to which you have been convicted of Lieutenant Scott are appropriate, I am going to strongly recommend, given the outstanding service that you have given the United States Marine Corps for three years, that the convening authority suspend or disapprove your dismissal, allow you to start your civilian life without that on your record. This is a strong recommendation to the convening authority, and you must understand, Lieutenant Scott, I do not have the power to suspend any form of punishment. That can only be done by the convening authority, but I strongly urge this on the convening authority. I think the confinement at hard labor, forfeiture of all pay, and suffering the loss of all lineal precedence coupled with your federal conviction is punishment enough. But as I stated I do not have power of clemency and a dismissal is appropriate in your case, and that is the reason this court has adjudged that punishment.

Appellant now contends that by his language the judge impeached the sentence.

[A] recommendation for clemency ... [may] impeach the sentence if it is based solely upon matters before the sentencing authority, and if the recommended clemency action is within the power of the sentencing authority to implement.

*United States v. McLaurin,* 9 M.J. 855, 858 (A.F.C.M.R), *pet. denied,* 10 M.J. 113 (1980) (footnote omitted). Thus, in *United States v. Kaylor,* 10 U.S.C.M.A. 139, 27 C.M.R. 213 (1959), this Court set aside a sentence

---

**3.** "Pornographic" is defined as:

That which is of or pertaining to obscene literature; obscene; licentious. Material is pornographic or obscene if the average person applying contemporary community standards, would find that the work taken as a whole appeals to the prurient interest and if it depicts in a patently offensive way sexual conduct and if the work taken as a whole

lacks serious literary, artistic, political or scientific value.

*Black's Law Dictionary* 1045 (5th ed. 1979).

**4.** That policy has been recently evidenced by enactment of the Child Protection Act, Pub.L. No. 98–292, 98 Stat. 204 (1984), and by the Supreme Court's decision in *New York v. Ferber,* 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982).

because the members of the court-martial had adjudged a bad-conduct discharge while at the same time recommending remission of the punitive discharge. As we observed:

> The question logically arises as to why a court-martial would impose a bad-conduct discharge and then, based on the same evidence, recommend a remission of it if they were not under the impression they were required to adjudge the discharge in the first instance. We do not treat this as an impeachment of the verdict by the court but rather as something more akin to an inconsistent or, at least, ambiguous verdict. Impeachment of a verdict more properly refers to an attempt to show by evidence of jurors or others that the jury misunderstood their instructions, that the verdict was determined by chance, or the presence of misconduct or something of a similar nature. See, generally, 53 Am Jur, Trial, § 1105, et seq. No contention is made by the members of the court that the sentence as announced does not properly reflect their intention. What we have, rather, is an action so inherently inconsistent that we are not able to reconcile the court's actions and are led to question whether they had a proper appreciation of their own duties and powers.

*Id.* at 141, 27 C.M.R. at 215.

The judge's remarks here are somewhat ambiguous. We observe, however, that the judge stated specifically that he had adjudged a punishment which he considered to be "appropriate." Moreover, in his remarks he indicated that "a dismissal is appropriate in your case, and that is the reason this court has adjudged that punishment." We are convinced that it is desirable for trial judges to provide reviewing authorities their insights as to the most suitable punishment for each accused and the desirability of individualized clemency. Such pronouncements not only assist reviewing authorities in their task but also may be meaningful for the accused as he seeks to put his life back together again after sentencing.

We do not wish to inhibit the expression of a judge's views by a hypertechnical examination of his explanatory comments. Here the judge twice stated that he was giving an "appropriate" sentence; and nothing about the terms of the adjudged sentence would induce a belief that they were inappropriate. Under the circumstances, we are convinced that the judge knew what he was doing and imposed a sentence he thought was appropriate, even though his phrasing was infelicitous.

## VI

The decision of the United States Navy-Marine Corps Court of Military Review is reversed as to Charge I and its specification; the findings of guilty thereon are set aside and that Charge and its specifications are dismissed. In all other respects the decision below is affirmed.

COX, Judge (concurring):

The Government, in oral argument, urged this Court to hold that charges against an officer under Article 133, Uniform Code of Military Justice, 10 U.S.C. § 933, are, in every circumstance, within the subject-matter jurisdiction of courts-martial. The Government contends that because it must always prove that the misconduct alleged was "unbecoming an officer and a gentleman," proof of the offense satisfies the subject-matter jurisdiction required by *Relford v. Commandant,* 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971), and *O'Callahan v. Parker,* 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969). I agree with the Government's contention, and I would urge a decision on that ground alone if there were no other basis to find jurisdiction. *See* my separate opinion in *United States v. Johanns,* 20 M.J. 155, 161 (C.M.A.1985); *see also Parker v. Levy,* 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974).

In essence, Article 133 is, in every sense, an offense which is unique to the military community and is of special significance therein. It focuses on the fact that an

accused is "an officer" and that his conduct has brought discredit upon all officers and, thus, upon the honor, integrity, and good character inherent in this important, unique status.[1] There is no question in my mind that we must zealously preserve and protect the status of an officer.

No one has spoken more eloquently about the concept of being "an officer and a gentleman" than General Douglas MacArthur did when he addressed the Corps of Cadets at West Point on May 12, 1962. He stated:

Duty, honor, country: Those three hallowed words reverently dictate what you ought to be, what you can be, what you will be. They are your rallying point to build courage when courage seems to fail, to regain faith when there seems to be little cause for faith, to create hope when hope becomes forlorn.

Unhappily, I possess neither that eloquence of diction, that poetry of imagination, nor that brilliance of metaphor to tell you all that they mean.

The unbelievers will say they are but words, but a slogan, but a flamboyant phrase. Every pedant, every demagogue, every cynic, every hypocrite, every troublemaker, and, I am sorry to say, some others of an entirely different character, will try to downgrade them even to the extent of mockery and ridicule.

But these are some of the things they do. They build your basic character. They mold you for your future roles as the custodians of the nation's defense. They make you strong enough to know when you are weak, and brave enough to face yourself when you are afraid.

They teach you to be proud and unbending in honest failure, but humble and gentle in success; not to substitute words for actions, not to seek the path of comfort, but to face the stress and spur of difficulty and challenge; to learn to stand up in the storm, but to have compassion on those who fall; to master yourself before you seek to master others; to have a heart that is clean, a goal that is high; to learn to laugh, yet never forget how to weep; to reach into the future, yet never neglect the past; to be serious, yet never to take yourself too seriously; to be modest so that you will remember the simplicity of true greatness, the open mind of true wisdom, the meekness of true strength.

They give you a temperate will, a quality of the imagination, a vigor of the emotions, a freshness of the deep springs of life, a temperamental predominance of courage over timidity, of an appetite for adventure over love of ease.

They create in your heart the sense of wonder, the unfailing hope of what next, and the joy and inspiration of life. They teach you in this way to be an officer and a gentleman.

*A Soldier Speaks*, Public Papers and Speeches of General of the Army Douglas MacArthur 353–54 (Frederick A. Praeger, Publishers, 1965).

If we are willing to permit this concept of "an officer and a gentleman" to erode, even ever so slightly, then next comes corruption, tyranny, and even the possibility of a military coup. Too much time has been spent and too many lives have been lost defending this concept to let it die now by judicial edict.

I am comforted by the fact that the Congress of the United States felt so strongly about the concept of what "an officer and a gentleman" is that it enacted not only Article 133, 10 U.S.C. § 933, but Article 4, 10 U.S.C. § 804, as well.[2] Article 4 of the Uniform Code recognizes an officer's right to be tried by court-martial before he can be dismissed from the service by the President. This is very convincing

---

1. The appointment of an "officer" in the Armed Forces is a function of the President of the United States vested in that office by Article II, Section 2, of the Constitution. "Officer" is a term of art, and a person appointed to such a position must be regarded as unique in the eyes of the law.

2. Article 4, Uniform Code of Military Justice, 10 U.S.C. § 804.

evidence that Congress recognized the unique status of an officer.

Although I agree with the excellent analysis contained in the principal opinion, I do not want to lose sight of the historical and fundamental principle of what "an officer and a gentleman" is. I would affirm on this basis alone.

I also write to make it clear that I agree with Judge Fletcher's analysis of multiplicity of substantive charges and charges under Article 133 as expressed in *United States v. Timberlake*, 18 M.J. 371 (C.M.A. 1984), and I do not agree with Chief Judge Everett's concurring opinion therein, *id.* at 377. *See also United States v. Rodriquez*, 18 M.J. 363 (C.M.A.1984). As I interpret Chief Judge Everett's position, he would abolish Article 133 where the proof supports a conviction under a punitive article. I believe, however, that Article 133 is a separate and distinct offense, and I would find punitive misconduct to be lesser-included in an Article 133 offense only when a punitive article is alleged as the misconduct giving rise to the Article 133 offense.