UNITED STATES, Appellee,

v.

Major James H. DALLMAN, 325–46–9740, United States Army, Appellant.

ACMR 8903075.

U.S. Army Court of Military Review.

25 Feb. 1991.

For Appellant: Captain Brian D. Bailey, JAGC, Captain Allen F. Bareford, JAGC (on brief).

For Appellee: Colonel Alfred F. Arquilla, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Captain Timothy W. Lucas, JAGC, Captain Clay E. Donnigan, JAGC (on brief).

Before JOHNSON, WERNER and GRAVELLE, Appellate Military Judges.

## OPINION OF THE COURT

WERNER, Judge:

Before a military judge sitting as a general court-martial, the appellant pled guilty to and was convicted of forty-four specifications alleging wrongful distribution of federally controlled drugs, three specifications alleging conduct unbecoming an officer and a gentleman, and three specifications alleging wrongful distribution of state controlled drugs in violation of Articles 112a, 133 and 134, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. §§ 912a, 933 and 934 (1982 & Supp. V 1987), respectively. He was sentenced to dismissal from the service, confinement for twelve months, and forfeiture of $833.00 pay per month for seven months. In accordance with a pretrial agreement, the convening authority approved only the dismissal and forfeitures.

### I.

The appellant was the Chief of the Psychiatry Clinic at Winn Army Hospital, Fort Stewart, Georgia. During his assignment to the hospital, the appellant befriended Kenneth Wynn and his employee, Tammy Wheeler, both civilians, operators of the hospital snack bar. Neither individual was entitled to military medical care. In July 1988, Wynn, who suffered from blindness and partial paralysis of his legs, approached the appellant about obtaining medication for a variety of medical ailments. The appellant knew that Wynn was not authorized military medical care but nevertheless, elected to prescribe medication for him. During the providence inquiry, the appellant stated he made this decision because Wynn was "financially strapped" and because appellant felt it was "the humane thing to do."[1] On many occasions in the months that followed, the appellant continued to prescribe controlled drugs for Wynn. These included Talwin for pain, Diazepam (Valium) for anxiety, Tega Tussin for coughing, Seconal–Secobarbital for insomnia, Elavil (Amitriptyline) for depression, Thioridazine, Dexedrine and Placidyl.[2]

---

1. Although appellant told the judge his motives were beneficent, the stipulation of fact indicated he accepted between two and three hundred dollars from Wynn for the prescriptions. Moreover, in the stipulation, the appellant admitted knowing that Wynn was a drug abuser.

2. All of the drugs mentions except Elavil and Thioridazine are listed in Schedules II, III and IV of The Controlled Substance Act, 21 U.S.C. § 812. Elavil and Thioridazine are listed as dangerous drugs under Georgia law but not under federal law. Ga.Code Ann. § 16–13–72 (1988).

The appellant admitted that he was derelict in his duties in not ordering certain diagnostic medical procedures for Wynn prior to prescribing the drugs. As a minimum, he should have ordered a "physical examination, blood testing, urine testing, because of cough probably a chest x-ray." Appellant stated that his failure to perform the necessary procedures was irresponsible and not in keeping with acceptable standards of medical care followed by the medical profession and the Army.

The appellant treated Wheeler for insomnia by prescribing Seconal–Secobarbital for her. He admitted that he knew Wheeler was not entitled to medical care and that his failure to perform diagnostic tests on her was not in compliance with medical and military professional standards. He also admitted that by using the hospital's facilities and prescription pads, he violated the punitive provisions of Army Reg. 600–50, Standards of Conduct for Department of Army Personnel, para. 2–4 (28 Jan. 1988) [hereinafter AR 600–50]. Finally, he admitted that his derelictions and disobedience constituted disgraceful and dishonorable conduct under Article 133 of the Code.

## II.

The appellant contends that his pleas of guilty to the specifications charged under Article 133, UCMJ, were improvident. Two specifications allege that appellant was derelict in the performance of his duties as a psychiatrist at an Army hospital in that between July 1988 and April 1989, he "negligently and willfully failed to perform [examinations of Kenneth Wynn and Tammy Wheeler] prior to prescribing [them] medications." The third specification alleges that during the same period, appellant disobeyed a general regulation (AR 600–50, para. 2–4) by "wrongfully using government facilities and property for other than official purposes." For the reasons set forth below, we hold that the appellant's pleas were provident.

■ In military law, before an accused's plea of guilty may be accepted, the military judge must determine that it is voluntary and accurate. Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial [hereinafter R.C.M.] 910(d) and (e). Although an accused expresses his willingness to admit guilt to an offense, that alone is not sufficient to establish the providence of a plea of guilty as it only reflects his *subjective* belief that his conduct as alleged was criminal. The accused must also reveal factual circumstances which *objectively* establish his guilt within the "four corners" of the specification. *United States v. Chambers*, 12 M.J. 443 (C.M.A.1982); *United States v. Davenport*, 9 M.J. 364 (C.M.A.1980).[3] This, of course, presupposes that the language contained within the specification sufficiently states an offense. *United States v. Petree*, 23 C.M.R. 233 (C.M.A.1957); *United States v. Fout*, 13 C.M.R. 121 (C.M.A.1953); *United States v. Sell*, 11 C.M.R. 202 (C.M.A.1953); *United*

**3.** In setting forth these criteria, the Court of Military Appeals opined:

In other words, what this Court required in *Care* [*United States v. Care*, 40 C.M.R. 247 (C.M.A.1969) ] was, in pertinent part, an inquiry by the military judge of the accused into the facts and circumstances surrounding the act or acts charged in order to establish a factual basis for the judge's conclusion that the accused is, in fact, guilty. This requirement was promulgated because, unlike civilian practice, Article 45, UCMJ, 10 U.S.C. § 845, requires that a guilty plea be in accordance with actual facts. But *Care* established no requirement—nor has any subsequent decision of the Court—that any witness be called or any independent evidence be produced to establish the factual predicate for the plea. Thus, if the specification alleges, within its four corners, all elements of the offense in question; if the accused pleads guilty to that specification; and if the inquiry of the accused indicates not only that the accused himself believes he is guilty but also that the factual circumstances as revealed by the accused himself objectively support that plea, then the plea may be accepted by the military judge as provident. If the accused sometime during the pleading sets up matter which is inconsistent with a plea of guilty, then the plea must be rejected. But evidence from outside the record will not be considered by appellate authorities to determine anew the providence of the plea. Under *Care*, providence of a tendered plea of guilty is a matter to be established one way or the other at trial. *United States v. Davenport*, 9 M.J. at 366–67. (Citations omitted).

**628**

States v. Schiavo, 14 M.J. 649 (A.C.M.R. 1982).

The Court of Military Appeals, in upholding the providence of an accused's plea of guilty to conduct unbecoming an officer opined:

> If the specification pleads conduct which is facially innocuous, the fact that the accused pleaded guilty to the charge will not save it for the Government. *See United States v. Lockstrom*, 48 C.M.R. 202, 204 (A.F.C.M.R.1974). If however, sufficient facts are pleaded that could reasonably be found to constitute conduct unbecoming an officer, the conviction will be upheld.

*United States v. Norvell*, 26 M.J. 477, 480 (C.M.A.1988). (Footnote omitted).

Captain Norvell argued that her plea of guilty to communicating to an enlisted person how to conceal use of marijuana by self-catheterization should have been set aside on grounds of legal insufficiency. The Court determined however, that "there was little doubt" Captain Norvell's acts of misconduct "could constitute conduct unbecoming an officer." *Id.*

The gravamen of the offense of conduct unbecoming an officer and a gentleman is:

> [A]ction or behavior in an official capacity which, in dishonoring or disgracing the person as an officer, seriously compromises the officer's character as a gentleman, or action or behavior in an unofficial or private capacity which, in dishonoring or disgracing the officer personally, seriously compromises the person's standing as an officer.

MCM, 1984, Part IV, para. 59c(2). *See also United States v. Guaglione*, 27 M.J. 268 (C.M.A.1988).

■ Disgraceful or dishonorable conduct that seriously impugns an officer's character as a gentleman depends not on whether that officer's behavior otherwise amounts to an offense, but whether the acts alleged to be offensive constitute serious breaches of standards of morality and integrity. *Norvell*, 26 M.J. at 477; *United States v. Giordano*, 35 C.M.R. 135 (C.M.A. 1964). Acts of dishonesty, unfair dealing, indecency, indecorum, lawlessness, injus-

tice, or cruelty exemplify behavior violative of this Article. Conduct amounting to minor derelictions, even though criminally offensive, do not. Thus, an officer's failure to meet a suspense date that constituted willful dereliction of duty and which tended to diminish his standing as an officer was held not violative of Article 133 because it did not impugn his honor or integrity nor subject him to social disgrace. *United States v. Sheehan*, 15 M.J. 724 (A.C.M.R. 1983). Other examples of criminal conduct held not to constitute violations of Article 133 include failing to repair and being AWOL for two days, *United States v. Clark*, 15 M.J. 594 (A.C.M.R.1983); violating a local order to report one's whereabouts to a unit commander, *Lockstrom*, 48 C.M.R. at 202; and being derelict in one's duties by failing to shave at a particular time of day. *United States v. Wolfson*, 36 C.M.R. 722 (A.B.R.1965).

■ As in *Norvell*, we are confronted with the question of whether the acts alleged in the specifications are "facially innocuous" or *reasonably* "constitute conduct unbecoming an officer" and a gentleman. Unlike the situation presented in *Norvell*, we must also resolve the question of whether the matters elicited during the plea inquiry objectively furnish a factual predicate for appellant's plea. We find the appellant's conduct, as alleged, could reasonably constitute conduct unbecoming an officer and a gentleman. We are also satisfied that there is a sufficient factual basis for his pleas.

■ The following factors support the appellant's pleas of guilty to the offenses involving prescription of medication without an examination. First, the intrinsic nature of the offenses warrants their classification as "serious." Prescribing medication, even under the best of conditions, has great potential for harm to the patient. For a doctor to do so without examining the patient adds to that risk. Second, the allegation encompasses a period of ten months. Misconduct for this length of time not only increases the likelihood of harm to the patient but also demonstrates

the extent of appellant's lack of concern for the consequences of his acts. Third, implicit in the allegation is the negative impact on the military community upon learning that military doctors occasionally fail to adhere to acceptable standards of medical care. Undermining confidence in the quality of military medical care discredits the medical service. Fourth, although appellant stated he prescribed the medication for humane reasons, he stipulated that he accepted money from Wynn in exchange for the service. This indicates his own financial interest was also a factor and supports the conclusion that his actions were dishonorable.[4]

■ Likewise, appellant's pleas of guilty to misuse of governmental facilities and property are provident. His acts entailed dishonesty and self-aggrandizement and were aggravated by their commission over a lengthy period of time. The appellant has argued that he merely misused prescription pads, a fact that should lead us to conclude the offense was minor. However, the appellant's actions reflected not only a misuse of prescription pads or clinic facilities, but also an abuse of his position as Chief of the Psychiatry Clinic.

### III.

The appellant also contends that his pleas of guilty to wrongfully distributing controlled drugs in violation of Article 112a, UCMJ, should have been rejected. He argues that because the providence inquiry indicated he dispensed controlled drugs by prescription for medicinal purposes, his actions were not wrongful under the Code. MCM, 1984, Part IV, para. 37c(5)(B). Therefore, his pleas are inconsistent with guilt. We disagree.

■ Article 112a, UCMJ, prohibits military personnel from, *inter alia*, wrongfully distributing substances listed in schedules I through V of section 812 of the Drug Abuse Prevention Act of 1970 (21 U.S.C. § 812 (as amended 1984, 1986)). The Man-

ual provides that distribution of a controlled substance is not wrongful if "done by authorized personnel in the performance of medical duties." MCM, 1984, Part IV, para. 37c(5)(B). Military appellate courts have not decided whether and under what conditions military medical personnel may violate Article 112a by improper dispensing of controlled drugs. The issue has, however, been resolved by the United States Supreme Court.

In *United States v. Moore*, 423 U.S. 122, 96 S.Ct. 335, 46 L.Ed.2d 333 (1975), the Court upheld the conviction of a licensed physician authorized to prescribe controlled drugs for knowing and unlawful distribution and dispensation of methadone in violation of 21 U.S.C. 841(a)(1). The Court analyzed the legislative history of the Act as well as its express language in holding that Congress intended to limit the authority of a registered physician to dispense controlled drugs to lawful acts. Quoting from the trial judge's instructions, the Court defined lawful acts as those within "the usual course of a professional practice and in accordance with a standard of medical practice generally recognized and accepted in the United States." 423 U.S. at 139, 96 S.Ct. at 344. The federal judiciary has followed the Supreme Court's lead in numerous decisions. *See United States v. Tighe*, 551 F.2d 18 (3d Cir.1977); *United States v. Fellman*, 549 F.2d 181 (10th Cir. 1977); *United States v. Ellzey*, 527 F.2d 1306 (6th Cir.1976). In light of the foregoing authorities and the fact that the Controlled Substances Act is expressly referenced in the language and legislative history of Article 112a, we hold that the appellant could have permissibly pled guilty to wrongful distribution of controlled drugs in violation of that provision of the UCMJ.

■ The appellant's pleas of guilty were provident. The military judge correctly advised the appellant of the elements of the offense. The information elicited during the providence inquiry clearly established

---

4. Appellant also contended that his actions did not amount to dereliction of duty because he had no duty to treat persons not authorized military medical care. Assuming *arguendo*, he

is correct in this assertion, there is no requirement that the misconduct charged under Article 133 violate another Code provision. *Norvell*, 26 M.J. at 477.

that appellant, on numerous occasions, willfully failed to comply with acceptable standards of the medical profession and of the military medical facility in which he worked. Therefore, the exception set out in MCM, 1984, Part IV, para. 37c(5)(B) that protects authorized medical personnel from prosecution did not apply.

### IV.

■■■■ The appellant also asserts that his pleas of guilty to wrongful distribution of dangerous drugs in violation of a Georgia statute were improvident. He argues that the record fails to establish the necessary jurisdictional predicate for application of the law under the Assimilative Crimes Act, 18 U.S.C.A. § 13(a) (West Supp.1989).[5] Appellant correctly argues that in a prosecution based on the Assimilative Crimes Act, the government must first establish exclusive or concurrent legislative jurisdiction over the place where the offense was committed before the state law may be assimilated. *United States v. Irvin,* 21 M.J. 184 (C.M.A.1986). However, "a plea of guilty admits the requisite element of 'exclusive or concurrent [Federal] jurisdiction' over the situs of the crime." *United States v. Kline,* 21 M.J. 366, 367 (C.M.A. 1986). We reject the appellant's jurisdictional argument and find that his pleas were provident.

Although not raised by the appellant, other issues concerning the providence of the appellant's pleas merit discussion.

■■■■ The three specifications in question allege that the appellant wrongfully distributed "dangerous drugs [Elavil and Thioridazine] in violation of Section 16-13-72 of the Official Code of Georgia Annotated [hereinafter Ga.Code Ann.], as assimilated by Title 18 United States Code, Section 13, such conduct being prejudicial to good order and discipline in the armed forces." In general, a specification is legally sufficient if, expressly or by necessary implication, it contains the elements of the offense intended to be charged; sufficiently apprises the accused of what he must defend against; and in the event of subsequent proceedings, protects him from double jeopardy. *United States v. Sell,* 11 C.M.R. 202 (C.M.A.1953). When the specification is premised on the Assimilative Crimes Act charged via the crimes and offenses not capital clause of Article 134, "the specification must set forth each element of the underlying statutory offense. Otherwise, it is fatally defective, the defect not being cured by the allegation of general words of criminality such as 'wrongfully' and 'unlawfully.'" *United States v. Almendarez,* 46 C.M.R. 814, 815–816 (A.C.M. R.), *pet. denied,* 46 C.M.R. 1323 (C.M.A. 1972) (*citing United States v. Hogsett,* 25 C.M.R. 185 (C.M.A.1958)).

■■■ The express language of the specifications sufficiently states an offense under either the first or the third clause of Article 134.[6] Thus, either clause may fur-

---

5. The Act provides:

> Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title, [special maritime and territorial jurisdiction of the United States defined] is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

The territoriality of the act as set forth in 18 U.S.C. § 7 provides, pertinently:

> (3) Any lands reserved or acquired for the use of the United States and under the exclusive or concurrent jurisdiction thereof, or any

place purchased or otherwise acquired by the United States by consent of the legislature of the State in which the same shall be, for the erection of a fort, magazine, arsenal, dockyard, or other needful building.

6. The Court of Military Appeals has, from time to time, been confronted with the question of whether an accused charged with violating as assimilated state law can, if warranted by the evidence, alternatively be convicted of misconduct prejudicial to good order and discipline or discrediting to the armed forces. *See United States v. Rowe,* 32 C.M.R. 302 (C.M.A.1962); *United States v. Long,* 6 C.M.R. 60 (C.M.A.1952); *United States v. Herndon,* 4 C.M.R. 53 (C.M.A. 1952). We need not decide the question in this case, because the specifications in issue allege appellant's misconduct violated both the assimilated statute and the prejudice to good order and discipline clause.

nish a foundation for the appellant's pleas of guilty if the record adequately established that the appellant's pleas were voluntarily made, factually supported and clear of matters inconsistent with guilt. *Davenport*, 9 M.J. at 364. We are satisfied that the judge's inquiry accomplished this as to the Assimilative Crimes Act but not as to the prejudice to good order and discipline clause.

During the providence inquiry, the military judge and the appellant engaged in the following duologue:

MJ: I'd like to move on to Charge II, and Charge II alleges that on three different occasions you distributed what is described as dangerous drugs under the law of Georgia, that being Section 16–13–72 of the Official Code of Georgia, that you distributed dangerous drugs. Do you understand the charge?

ACC: Yes, sir, I do.

MJ: And you understand that this conduct has to be prejudicial to good order and discipline in the Armed Forces to constitute an offense?

ACC: Yes, sir.

MJ: And do you agree that such conduct was prejudicial to good order and discipline in the Armed Forces?

ACC: Yes, sir.

MJ: In other words you were violating a group of military traditions, customs, and regulations when you wrote these prescriptions?

ACC: Yes, sir.

MJ: And by violating those various canons of various military rules and regulations this, of course, is prejudicial to good order and discipline in the Armed Forces.

ACC: Yes, sir.

MJ: Okay, Specification 7 of Charge II alleges that at Fort Stewart, Georgia, on or about 12 September 1988, you unlawfully distributed a dangerous drug, that is Elavil; secondly, that the distribution of Elavil is regulated by Section 16–13–72 of the Official Code of Georgia; and third, that your conduct was prejudicial to good order and discipline in the Armed Forces. And unlawfully distribute

means, in this context, that your distribution in each occasion was done outside the usual course of professional practice and with no legitimate medical purpose.

ACC: Yes, sir.

MJ: And secondly, that you committed the same offense on 20 September 1988, by prescribing the Thioridazine. And that you did this also on a third occasion in Specification 28, on the 20th of November 1988, again where you prescribed Elavil.

ACC: Yes, sir.

MJ: Okay. Do you admit that on 12 September 1988, at Fort Stewart, Georgia, you distributed Elavil, or at least wrote a prescription so that Elavil could be obtained?

ACC: Yes, sir.

MJ: Secondly, do you admit that your distribution was wrongful and unlawful?

ACC: Yes, sir.

MJ: And that it was prejudicial to good order and discipline in the Armed Forces?

ACC: Yes, sir.

\*　　\*　　\*　　\*　　\*　　\*

MJ: All right. So on 12 September you knew it was regulated by the State of Georgia. And for whom did you write this prescription?

ACC: Wynn.

MJ: Okay. And you knew that at that point in time you were not authorized to write prescriptions for Wynn?

ACC: Yes, sir.

MJ: And you wrote this prescription without conducting the usual medical examinations of the patient?

ACC: That's correct, sir.

MJ: Okay. All of which contributed to making this distribution unlawful?

ACC: Yes, sir.

MJ: And how about on 20 September, who did you write that for?

ACC: All three of these specifications are for Wynn, sir.

\*　　\*　　\*　　\*　　\*　　\*

MJ: I will ask you this though. You have agreed that these things are regulated by the State of Georgia?

ACC: Yes, sir.

MJ: These prescriptions are going to be filled in the State of Georgia, to the best of your knowledge and belief, and you had no license to practice in the State of Georgia?

ACC: Yes, sir.

Among the procedures that military judges must follow during a providence inquiry are:

(c) Advice to accused. Before accepting a plea of guilty, the military judge shall address the accused personally and inform the accused of, and determine that the accused understands, the following:

(1) The nature [elements] of the offense to which the plea is offered, the mandatory minimum penalty, if any, provided by law, and the maximum possible penalty provided by law....

MCM, 1984, R.C.M. 910(c).

 The requirement that the accused be advised of the elements of the offense does not mean that they must be separately listed. It is sufficient if the judge's questions fairly "covered the essential requirements of proof for [each] offense." *United States v. Grecco*, 5 M.J. 1018 (C.M.A.1976) (memo op.), *citing United States v. Kilgore*, 44 C.M.R. 89 (C.M.A. 1971). Furthermore, "it seems clear that substantially correct advice as to the maximum authorized period of confinement is essential." *United States v. Castrillon–Moreno*, 7 M.J. 414, 415 (C.M.A.1979); *United States v. Harden*, 1 M.J. 258 (C.M. A.1976). Whether misadvice as to the maximum punishment will improvidence a plea of guilty depends on "all the circumstances of the case presented by the record." *United States v. Poole*, 26 M.J. 272, 274 (C.M.A.1988), *citing United States v. Hunt*, 10 M.J. 222 (C.M.A.1981). The revelation of matters in defense can vitiate a plea of guilty as they are inconsistent therewith. However, when those matters amount to no more than a "tactical possibility" of a defense, an otherwise provident plea of guilty need not be set aside. *Unit-*

*ed States v. Logan*, 47 C.M.R. 1 (C.M.A. 1973).

With respect to the elements of the offense of Article 134, UCMJ, the Manual provides:

The proof required for conviction of an offense under Article 134 depends upon the nature of the misconduct charged. If the conduct is punished as a crime or offense not capital, the proof must establish every element of the crime or offense *as required by the applicable law.* If the conduct is punished as a disorder or neglect to the prejudice of good order and discipline in the armed forces, or of a nature to bring discredit upon the armed forces, then the following proof is required:

(1) That the accused did or failed to do certain acts; and

(2) That, under the circumstances, the accused's conduct was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

MCM, 1984, Part IV, para. 60b (emphasis added).

The Georgia law which we judicially notice, Ga.Code Ann. § 16–13–72, provides in relevant part:

Except as provided for in this article, it shall be unlawful for any person, firm, corporation, or association to sell, give away, barter, exchange, distribute, or possess in this state any dangerous drug, except under the following conditions:

\* \* \* \* \* \*

(4) A practitioner of the healing arts may possess dangerous drugs and may sell, give away, barter, exchange, or distribute the same in accordance with Code Section 16–13–74;

The incorporated section, Ga.Code Ann. § 16–13–74, further provides in relevant part:

(a) All written prescriptions for dangerous drugs shall be dated as of, and be signed on, the date when issued and shall bear the full name and address of the patient, together with complete directions for administration, and the num-

ber of permitted refills. A practitioner may sign a prescription as he would sign a check or a legal document. The prescription shall be written with indelible pencil or indelible ink or typewritten and shall be manually signed by the practitioner....

(b) Any practitioner of the healing arts who fails to comply with subsection (a) of this Code section shall be guilty of a misdemeanor.

With respect to the military judge's advice under the Georgia statute, we find that the appellant was adequately apprised of the elements of the offense. The language of the specification identified the essential statutory provision and the military judge advised the appellant that his distribution of dangerous drugs violated its terms. The judge did fail to advise the appellant that he may have been able to avail himself of a statutory defense. Subsection (4) of Section 16–13–72 permits practitioners of the healing arts to distribute dangerous drugs provided they comply with certain requirements for writing prescriptions. Indeed, there is evidence of record that the appellant may have complied with those requirements. Conversely, there is his admission that, by prescribing drugs in violation of accepted standards of medical practice, he could not avail himself of the statutory defense. Arguably, the Georgia Controlled Substances Act, like its federal counterpart, exempts physicians from punishment for violating its provisions only when they are acting within the lawful scope of their medical practice. We have found no decisions from the highest court of the State of Georgia to support that argument and, in any event, find it unnecessary to make that determination. At best, this constitutes no more than a tactical possibility of a defense and therefore is not, by itself, sufficient to vitiate the appellant's pleas. *Logan,* 47 C.M.R. at 1; *see also Woods v. State,* 233 Ga. 347, 211 S.E.2d 300 (1974).

The military judge also failed to advise the appellant of the maximum punishment he faced as a result of his pleas of guilty. We find this omission harmless. The pretrial agreement, which provided for disapproval of all confinement and dismissal of all contested charges, was favorable to the appellant and tends to support the conclusion that he would not have changed his pleas to not guilty had he been fully advised. *Poole,* 26 M.J. at 272.

With respect to the appellant's pleas of guilty to distributing dangerous drugs in violation of the prejudice to good order and discipline clause of Article 134, we hold that the record fails to demonstrate a sufficient factual predicate to permit affirmance of the appellant's conviction on this ground. The appellant admitted that his distribution of dangerous drugs was wrongful because he intentionally wrote prescriptions for Mr. Wynn knowing that his actions were done: 1) "outside the usual course of professional practice and with no legitimate medical purpose;" 2) "without conducting the usual medical examinations of the patient"; 3) on behalf of an "unauthorized" individual; and 4) with "no license to practice in the State of Georgia." The first three of these "disorders" are identical with those set out in the specifications alleged under Article 133. They therefore merge into those specifications for findings purposes. *See United States v. Armusewicz,* 16 M.J. 418 (C.M.A.1983) (summary disposition), *citing United States v. Roman–Luciano,* 13 M.J. 490 (C.M.A.1982). The last rationale is factually unsupported. We know of no requirement that military doctors be locally licensed before practicing medicine on a military installation. Assuming, *arguendo,* that the appellant was required to be licensed locally before dispensing drugs to persons not authorized military medical care, it would not necessarily prejudice good order and discipline in the armed forces. Not every violation of local law prejudices good order and discipline. *See United States v. Caballero,* 49 C.M.R. 594 (C.M.A.1975); *Rowe,* 32 C.M.R. at 302.

So much of the findings of guilty of the specifications of Charge II as provide that "such conduct being prejudicial to good order and discipline in the armed forces" is set aside and dismissed. The remaining

**634**

findings of guilty are affirmed. Reassessing the sentence on the basis of the errors noted and the entire record, the Court affirms the sentence.

Senior Judge JOHNSON and Judge GRAVELLE concur.