**UNITED STATES, Appellee,**

v.

**Staff Sergeant Bernard W. KENERSON III, 262–27–8871, United States Army, Appellant.**

**ACMR 9100214.**

U.S. Army Court of Military Review.

31 Jan. 1992.

---

For Appellant: Major Michael J. Kelleher, JAGC, Captain James M. Heaton, JAGC, Captain Emmett G. Wells, JAGC (on brief).

For Appellee: Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Captain Marcus A. Brinks, JAGC, Captain Robert J. Walters, JAGC (on brief).

Before JOHNSON, WERNER and GRAVELLE, Appellate Military Judges.

## OPINION OF THE COURT

JOHNSON, Senior Judge:

A military judge sitting as a general court-martial convicted the appellant, consistent with his pleas, of four specifications of sodomy with a child, indecent liberties with a child, indecent acts with a child, and indecent acts with another, in violation of Articles 125 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 925 and 934 (1982) [hereinafter UCMJ]. The appellant was sentenced to a bad-conduct discharge, confinement for eleven years, forfeiture of $650.00 pay per month for 132 months, and reduction to Private E1. The convening authority approved only so much of the sentence as provides for a bad-conduct discharge, confinement for eleven years, and reduction to Private E1.

The appellant's assignment of error asserts that his guilty plea to committing an indecent act with another, his seven-year-old daughter, by showing her pornographic magazines, was improvident. Specifically, he urges that the military judge erred in accepting his plea because his explanation for showing her the magazines—an effort to explain to her that their incestuous relationship was wrong and must stop—was not consistent with the meaning of "indecent." We disagree.

Our disposition of this appeal brings into focus the differences between two similar offenses under Article 134, UCMJ: indecent acts with another and indecent liberties (or acts) *with a child*. The former is a general intent crime; the latter requires a specific intent.

■ To the original charge of taking indecent liberties with his daughter Jamie (Charge II, Specification 2), the appellant pled guilty by exceptions and substitutions

to committing indecent acts with another. His plea substituted the words "commit an indecent act" for the words "take indecent liberties," and excepted the words "with intent to gratify the lust and sexual desires of the said SSG Bernard W. Kenerson."[1] In his introductory remarks on the providence inquiry, the military judge explained to the appellant the meaning of the elements of the offenses and stated:

As I mention each of these facts to you, Staff Sergeant Kenerson, I want you to ask yourself first, whether the fact is true; second, whether you wish to admit that it's true in open court, and then be prepared to discussed [sic] the circumstances with me in your own words.

The three elements of indecent acts with another were described by the military judge as: (1) committing a wrongful act by showing his daughter pornographic magazines; (2) that the act was indecent, lewd and lascivious; and, (3) that under the circumstances his conduct was prejudicial to good order and discipline or was service discrediting.[2] Thereafter, the military judge addressed the appellant:

MJ: Now I told you before that an indecent act or lewd, lascivious act signifies that form of immorality relating to sexual impurity which is not only gross, vulgar, obscene and repugnant to common propriety, but tends to excite lust and deprave the morals with respect to sexual relations. You remember I gave you that definition?

ACC: Yes, sir.

MJ: Okay. Taken together as a whole do these elements accurately describe what you did ... between December of '89 and July of '90?

ACC: Yes, sir.

The appellant then went on to describe the circumstances of the offense:

ACC: When I discovered that I had them [the magazines] at home I was still trying to—I was working on stopping this behavior and I was trying to change some of the ideas that had come into my daughter's head because of our relationship. And I had the idea of showing her the magazines to convince her that what we were doing should be reserved for adults to do, and I showed her the magazine. I showed her some of the pictures of some of the women in there and I told her that was—what we had been doing wasn't right and it should be reserved for adults, but then when I showed it to her I noticed that she just took an interest in the pictures. She took an interest in the indecent way that the women were displaying themselves and the positions and just wanted to look at the magazines. I got the magazines back from her and then I held on to them and I got them out of the house the next day when I went to work.

. . . .

MJ: Okay. What did the pictures portray that you showed your daughter?

ACC: The pictorials that my daughter saw showed women in various degrees of

---

1. The specification then would have read as follows:

SPECIFICATION 2: In that SSG Bernard W. Kenerson, U.S. Army, did, at or near SHAPE, Belgium, between about December 1989 and July 1990, commit an indecent act with Jamie Kenerson, a female under 16 years of age, not the wife of the said SSG Bernard W. Kenerson, by showing the said Jamie Kenerson pornographic magazines.

The resulting specification would have been more accurate had the words "not the wife of the said [accused]" also been excepted since they properly are an element only of the charge of indecent liberties or acts. In this specification they are merely surplusage, as are the descriptive words "a female under 16 years of age." See United States v. Thomas, 25 M.J. 75, n. 1 (C.M.A.1987). The latter are harmless in this case since it was tried before a military judge; in other circumstances they could be considered as aggravation or even inflammatory. See United States v. Sanchez, 29 C.M.R. 32 (C.M.A.1960); United States v. Whitfield, 7 M.J. 780 (A.C.M.R.), pet. denied, 8 M.J. 101 (C.M.A. 1979).

2. The offense to which the appellant pled guilty, "indecent acts with another," has three elements:

(1) That the accused committed a certain wrongful act with a certain person;

(2) That the act was indecent; and

(3) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

undress, some of them in bedroom situations. There was one that I think was more of a livingroom situations. [sic] It was on a couch and they were in various lewd positions showing themselves.

MJ: Were they posing with other people?

ACC: There was one—one of the pictorials had two adults in it, had an adult male and an adult woman. And that was the particular one that I wanted to show her that this was just for adults; that it wasn't for adults and children.

MJ: Were they engaged in a sexual act?

ACC: No, sir. There were no sexual acts depicted. It was I think the term for this type of magazine was, "soft porn." There was no contact between the models.

MJ: Okay. As I understand what you told—again what was your purpose in doing this?

ACC: My purpose of doing this was I wanted to show my daughter that this is only for adults, what we had been doing. I had been trying to arrest this situation and stop it on my own through—there were times—the reason that I wanted to bring it home was that I wanted to show her that she needed to wait until she was older, until she was grown to engage in the acts that we had been engaging in.

. . . .

She reacted in a way that I hadn't thought about. She took an interest in the pictures immediately. She took an interest in the positions. . . . And I realized that I had made a mistake by even letting her see that.

The appellant's statements to the military judge during the course of the providence inquiry established that at the time the appellant had shown his daughter the pornographic magazines, he had been sexually abusing her for approximately ten months beginning in May 1989 when she was but six years old. During the course of this sexual mistreatment, the appellant had fondled her legs and vagina, had masturbated in front of her, had engaged in cunnilingus and fellatio with her, and had rubbed his penis on her vagina. The sexual abuse continued after the magazine incident.

The military judge continued his questioning of the appellant by asking whether he believed showing pornographic magazines to his daughter was an indecent act:

MJ: Do you think that's an indecent act?

ACC: Yes, sir, I do.

MJ: Why?

ACC: Because she is so young, sir, she shouldn't even have seen that. That's knowledge that she shouldn't have at her age.

MJ: If you were to hear about a neighbor of yours doing that with his daughter would you think that was an indecent act?

ACC: Yes, sir.

MJ: If that neighbor were to tell you that he was doing it because he had some legit—what he thought was a legitimate purpose; in other words he thought that he was going to be able to talk his daughter out of doing something that he felt was improper, similar to your situation, would you still feel the same way?

ACC: Yes, sir, I would.

MJ: Would you agree that material such as that viewed through your daughter's eyes might be substantially different than that viewed through your eyes?

ACC: Yes, sir.

. . . .

MJ: And you're satisfied that that's indecent?

ACC: Yes, sir, I'm satisfied that that's indecent.

Following this discussion, the military judge accepted the appellant's pleas and found him guilty of the offense in question. Prior to announcing sentence, however, the military judge stated:

Also for the record in accepting the plea to Specification 2 of Charge II the court is not necessarily satisfied that showing soft porn magazines to a child is necessarily an indecent act. However under the circumstances that's [sic] described by Staff Sergeant Kenerson in this case and all the circumstances surrounding the incidents involving his daughter prior

to that I believe that they were under—in this instance.

In the past six years, the Court of Military Appeals has twice considered whether showing photographs of nude persons to a child constitutes the offense of taking indecent liberties with a child. *United States v. Orben*, 28 M.J. 172 (C.M.A.), *cert. denied*, 493 U.S. 854, 110 S.Ct. 157, 107 L.Ed.2d 115 (1989); *United States v. Scott*, 21 M.J. 345 (C.M.A.1986). In both cases the court found that children were entitled to protection from premature exposure to materials which arouse their sexual passions. Societal interests in protecting the morals of children are so strong that criminal prosecution of those individuals corrupting children by showing them nude photographs is justified.

■ Although we are not aware of a case where an accused has been convicted of the offense of committing indecent acts with another, as distinct from the offense of indecent liberties, by showing pornographic pictures to a child under the age of sixteen, the offenses are similar. The essential difference between them is the element of specific intent required for indecent liberties—an "intent to arouse, appeal to, or gratify the lust, passions, or sexual desires of the accused, the victim, or both."[3] *Compare*, Manual for Courts–Martial, United States, 1984, Part IV, para. 87b and 90b [hereinafter MCM]; *see Orben*, 28 M.J. 172; *Thomas*, 25 M.J. 75, 76; *Scott*, 21 M.J. 345; `United States v. Riege*, 5 M.J. 938 (N.C.M.R.), *pet. denied*, 6 M.J. 196 (C.M.A.1978); *United States v. Hunt*, 5 M.J. 804, 806 (A.F.C.M.R.1978), *pet. denied*, 7 M.J. 161 (C.M.A.1979); *United States v. Sanchez*, 29 C.M.R. 32, 34 (C.M.A. 1960). That difference is all important regarding the appellant's assertion of error. The appellant, in pleading guilty to indecent acts with another, specifically excepted the words pertaining to the specific intent element of indecent liberties. Whereas an accused's intent or reason for showing pornographic materials to a child is critical to the offense of indecent liberties,

it is immaterial to the offense of indecent acts with another. *See United States v. Robertson*, 33 M.J. 832, 833 (A.C.M.R.1991) (giving 14 year-old stepdaughter a vibrator not indecent where requisite intent lacking).

■ It follows that, in a case of indecent liberties, a statement of the accused's intent which is inconsistent with the *mens rea* required to constitute the offense will render improvident a plea of guilty. Not so in the case of indecent acts with another where guilt turns on finding the act indecent in and of itself, not on the intent or purpose of the accused. The phrase "but tends to excite lust and deprave the morals with respect to sexual relations" used in defining "indecent" is not to be confused with the intent of an accused "to arouse, appeal to, or gratify the lust, passions, or sexual desires" which is an element of the offense of indecent liberties. Consequently, the appellant's assertion on appeal that his explanation to the military judge for showing the pictures to his daughter was inconsistent with his plea has no merit where, as here, the accused pled guilty to the offense of indecent acts with another. The appellant's reason for showing pornographic pictures to his seven year-old daughter does not change the indecent nature of that act under the circumstances present in this case.

■ It is axiomatic that before a plea is accepted as provident, the accused must admit every element of the offense to which he has entered a plea of guilty. *United States v. Brown*, 30 M.J. 907, 911 (A.C.M.R.1990); *see* Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 910(e), discussion [hereinafter R.C.M.]. Additionally, the military judge must make "such inquiry of the accused as shall satisfy the military judge that there is a factual basis for the plea." R.C.M. 910(e); *United States v. Dallman*, 32 M.J. 624 (A.C.M.R.), *review granted in part*, 34 M.J. 15 (C.M.A.1991); *see generally, United States v. Care*, 40 C.M.R. 247, 253 (C.M.A.1969). We find that these re-

---

**3.** Indecent liberties (or acts) *with a child* also requires proof of the age of the child and that

the individual was not the spouse of the accused.

quirements were met. The military judge explained each element of the offense to the appellant and provided an appropriate definition of "indecent." *See* MCM, Part IV, para. 90c. The appellant admitted the elements. The military judge then questioned the appellant about the circumstances of the offense to which the appellant provided extensive answers which objectively established his guilt. Although the appellant disclosed that his reason at the time he showed the pornographic magazines to his daughter was for the questionable purpose of stopping their incestuous relationship (as if that depended upon the conduct of a seven-year-old), he admitted repeatedly and without hesitation his belated realization that such conduct on his part was indeed indecent. His admission that he would view such acts in the same way if committed by a neighbor reinforced that position.

Having listened to the appellants's description of the nude photographs in the magazines that he showed to his daughter, and his characterization of them as "soft porn," the military judge demonstrated appropriate caution in hesitating to find that showing "soft porn" to a child was necessarily or intrinsically indecent. *See United States v. Blake*, 33 M.J. 923, 924 (A.C.M.R. 1991); *compare, Orben*, 28 M.J. 172, 174–75; *Scott*, 21 M.J. 345, 348–49. Rather, he chose to look at the circumstances surrounding the act in question, to include the preceding incidents of sexual abuse by the appellant with his young daughter, in finding the act indecent. We believe this to be the better approach. It is well to examine all of the circumstances which may include the level of the pornography and the age of the child. We note that this approach would not preclude a ruling that an act is intrinsically indecent in an appropriate case which involved, for example, showing so-called "hard porn" to a child.

Accordingly, we conclude that the appellant understood the meaning of "indecent" and that his conduct clearly amounted to such. The appellant realized that his tragically misguided reason for showing the pictures to his daughter did not change the nature of the wrongful act. His testimony

indicated, moreover, that instead of accomplishing his intended purpose, the nude photographs generated considerable interest on the part of his young daughter, an interest not specifically explained in the appellant's testimony but quite possibly a reflection of her premature exposure to sexual acts through her father's previous abuse. The rulings of the military judge were correct in fact and law.

We have considered the assertions personally made by the appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), and find them to be without merit.

The findings of guilty and the sentence are affirmed.

Judge WERNER and Judge GRAVELLE concur.