**UNITED STATES, Appellee,**

v.

**Randy W.J. ABELL, Staff Sergeant, U.S. Army, Appellant.**

No. 54649.

CMR Misc. No. 1986/1.

U.S. Court of Military Appeals.

Nov. 10, 1986.

For Appellant: *Captain David W. Sorensen* (argued); *Colonel Brooks B. La Grua,* *Lieutenant Colonel Paul J. Luedtke,* and *Major Eric T. Franzen* (on brief); *Lieutenant Colonel William P. Heaston* and *Captain Annamary Sullivan.*

For Appellee: *Captain Robert R. Long, Jr.* (argued); *Colonel James Kucera, Lieutenant Colonel Joseph A. Rehyansky, Lieutenant Colonel Gary F. Roberson,* and *Lieutenant Colonel Adrian J. Gravelle* (on brief); *Colonel Norman G. Cooper.*

*Opinion of the Court*

SULLIVAN, Judge:

Appellant was charged with three specifications alleging indecent acts with children

under the age of sixteen years in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. On January 13, 1986, appellant's trial began but it was terminated the next day by the military judge. He granted a defense motion to dismiss the charges because of a lack of subject-matter jurisdiction.

After the military judge denied a request from the convening authority to reconsider his decision, the Government appealed his dismissal ruling to the United States Army Court of Military Review in accordance with Article 62, UCMJ, 10 U.S.C. § 862. On March 11, 1986, that court held the military judge had erred, vacated his ruling, and returned the record of trial to him. Appellant, on March 13, 1986, petitioned this Court to review the decision of the Court of Military Review. We granted review on June 2, 1986, and heard oral arguments on June 26, 1986.

Prior to our grant of review, this Court denied appellant's motion to stay court-martial proceedings. On April 11, 1986, he was tried by general court-martial at Fort Benning, Georgia. Pursuant to his pleas, appellant was found guilty of the three specifications noted above. The military judge sentenced him to a dishonorable discharge, confinement for 2 and 1/2 years, total forfeitures, and reduction to E–1. The action of the convening authority and the Court of Military Review have not yet been reported to this Court.

----------

The military judge who dismissed these charges made specific findings of facts and articulated his reasons for granting appellant's motion:

The following are the essential facts I considered in reaching my decision on subject matter jurisdiction:

1) At the time of the alleged offenses, Sergeant Abell, the accused, was on active duty with B Company, 1st Battalion, 1st Aviation Brigade, Fort Rucker, Alabama.

2) The accused was drawing BAQ and resided offpost with his family in a trailer at the Deer Run Estates Trailer Court in Daleville, Alabama. This trailer court is not on military property but is adjacent to Fort Rucker, separated by a railroad track. However, the main cantonment area of Fort Rucker is six to eight miles from the trailer park.

3) The alleged victims are dependents of soldiers and were residing in the same trailer court as the accused.

4) The alleged victims were friends of the accused's daughter and were permitted to visit with her in the accused's trailer.

5) All the alleged offenses occurred in the accused's trailer.

6) A significant portion of the population of the Deer Run Estates Trailer Court, approximately eighty percent, consisted of soldiers and their dependents. The trailer court is on the offpost referral list maintained by Fort Rucker and this list contains over 5,000 units.

7) There were no facts presented showing any contact or activity of any kind between the accused and the alleged victims or their military fathers occurring on Fort Rucker.

8) The offenses in Specifications 1 and 2 allegedly occurred between 1 June 1985 and 1 July 1985. The offense in Specification 3 allegedly occurred between 1 May 1985 and 1 July 1985.

9) The alleged offenses were reported to civilian authorities on 1 July 1985. The parents of the children informed civilian authorities on 2 July 1985, they did not desire to prosecute. On 3 July 1985, Captain Ford, Dale County Sheriff's Department, told the accused if he voluntarily sought psychological counselling, "no charges would be brought against him."

10) Military police investigators first became aware of the matter in early July 1985 when civilian law enforcement agents informed them in the routine course of business.

11) The assistant district attorney for Dale County Alabama "deferred" prosecution on 4 October 1985 "in light of the geographic location of the victims and their families."

12) CID agents took sworn statements from Miss [W] on 25 August 1985 and Miss [Q] on 8 October.

13) [K][W] and her family moved to Fort Lewis, Washington, pursuant to PCS orders in October 1985.

14) [B][Q] and her family moved to Texas in the early part of September 1985.

15) Court-martial charges against the accused were preferred on 7 October 1985.

16) An Article 32 investigation was conducted on 4 November 1985 and charges referred to a general court-martial on 25 November 1985.

17) The alleged victims did not appear at the Article 32 investigation.

18) The facts do not reflect any onpost offenses to which the offpost offenses could be "pendent."

This is my ruling:

In my opinion, it is a reasonable and logical assumption that the commission of a series of indecent acts by a soldier on the children of other soldiers in his quarters located adjacent to a military installation has a direct, clear and measurable impact on the morale, reputation and integrity of the installation. I believe that it is also reasonable to assume the morale of soldiers and their dependents, particularly those living in the same housing area as an alleged offender would suffer even more if the appropriate civilian or military authorities did not take some action. It is apparent to me that civilian authorities never intended to prosecute Sergeant Abell. In reading the appropriate Army Court of Military Review decisions and in recalling some of my own decisions as a military judge, which I certainly cannot ignore, I have noted a reluctance on the part of the Army to "expand" military jurisdiction over "sexual offenses" committed by a soldier against other soldiers or their dependents offpost unless the government could show some "activity" or "contact" occurring on the military installation prior to commission of the offenses offpost. I specifically recall a case I tried less than eight months ago. The facts reflect a female trainee heard about a party being held in a motel approximately one mile from the post. She did not have an offpost pass but decided to try and find the party. She failed to locate any party but did see what she thought was a familiar name on the door of one of the rooms in the motel. She knocked on the door and two male soldiers answered. After entering, she met the accused, another E1, for the first time. They were not members of the same unit. The female trainee complained to military authorities the next day that she had been raped by the accused in the motel. Civilian authorities were notified. They arrested the accused and put him in pretrial confinement. The accused was released from pretrial confinement after two days. Civilian authorities investigated the case but later "waived" jurisdiction to the military. The civilian authorities stated they would take the case back if the military did not prosecute. The case was referred to general court-martial and I ruled "no service connection" and dismissed the charge. Government appellate division would not "permit" the installation to appeal my decision. The facts in this case fail to reveal any military relationship between the accused and the military fathers of the two victims (for example, superior/subordinate relationship, members of the same unit. performance of duty together or associating socially on post.) [K][W]'s stepfather was stationed in Korea while [B][J] [Q]'s stepfather was attending flight training at Fort Rucker. The accused was a member of a different unit. The facts also fail to reveal any "contact" or "activity" between the accused and the two alleged victims on post. There were no onpost offenses to which the offpost offenses could be "pendent." After considering all the facts, it is my determination that the military does not have subject matter jurisdiction. It is also my ruling that the government failed to allege the necessary jurisdictional factors in the specifications. I do not consider the words, "near Fort Rucker, Ala-

bama," as the government alleged to be sufficient. All specifications and the charge are dismissed.

The Court of Military Review reviewed this ruling, reversed the military judge, and found jurisdiction. It stated:

Appellee was arraigned at a general court-martial at Fort Rucker, Alabama, on three specifications alleging indecent acts with children under the age of 16 years, violations of Article 134, UCMJ. The facts show, *inter alia*, the alleged offenses occurred in appellee's trailer at a trailer court in Daleville, Alabama. The trailer court is located adjacent to Fort Rucker, separated from the installation by a railroad track, but six to eight miles from the main cantonment. Each of the alleged victims were dependents of soldiers and resided in the same trailer court as did the accused. Approximately 80 percent of the residents of this trailer court consisted of soldiers and their dependents. No evidence was presented, however, showing any contact or activity between the appellee and the alleged victims or their military fathers occurring on Fort Rucker.

Having reviewed the record and carefully considered briefs filed by both the government and the appellee, we conclude that the offenses alleged are "service connected" and that the military judge erred by dismissing them for lack of subject matter jurisdiction. *United States v. Solorio*, 21 M.J. 251 (C.M.A. 1986).

Unpublished opinion at 1–2.

## I

### SCOPE OF REVIEW

■ This case is before this Court in accordance with Articles 62(b) and 67(b)(3), UCMJ, 10 U.S.C. § 862(b) and 867(b)(3), respectively. *See United States v. Tucker*, 20 M.J. 52 (C.M.A.1985); *see also* R.C.M. 908(c)(3), Manual for Courts-Martial, United States, 1984. We note that the court below did not make any findings of fact contrary to the military judge or otherwise violate Article 62. *Cf. United States v.*

*Burris*, 21 M.J. 140, 143–44 (C.M.A.1985). Moreover, that court did not identify any particular error made by the military judge in reaching his conclusion that the charged offenses were not service-connected. *See United States v. Howard*, 20 M.J. 353 (C.M.A.1985); *United States v. Solorio*, 21 M.J. 512, 519–20 (C.G.C.M.R.1985). Apparently, it accepted the findings of fact made by the military judge but reached a different conclusion with respect to service-connection.

In this context, a question arises as to the propriety of the court below substituting its judgment for that of the military judge on the issue of service-connection. *See United States v. Burris, supra* at 144. For the reasons stated below, we hold that a *de novo* ad hoc judgment by the Court of Military Review on the issue of service-connection is within the scope of Article 62, and our review of such a judgment may be equally as broad.

It is well established that the question of service-connection is constitutional in nature. *Relford v. Commandant*, 401 U. S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971); *O'Callahan v. Parker*, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969). The Supreme Court, however, has defined its constitutional concern in practical terms. This "issue turns in major part on gauging the impact of an offense on military discipline and effectiveness, on determining whether the military interest in deterring the offense is distinct from and greater than that of civilian society, and on whether the distinct military interest can be vindicated adequately in civilian courts." *Schlesinger v. Councilman*, 420 U.S. 738, 760, 95 S.Ct. 1300, 1314, 43 L.Ed.2d 591 (1975). Like other constitutional questions similarly framed, it calls first for fact-finding and then a legal conclusion which is subject to full review by appellate courts. *See United States v. Burris, supra* at 144 n.8; *United States v. Middleton*, 10 M.J. 123 (C.M.A.1981). Moreover, the Supreme Court has expressly recognized the relevant, indeed indispensable, role that the judgments of military courts and this Court

can play in the final resolution of this particular constitutional question. *See Schlesinger v. Councilman, supra.* In this context, the practice of this Court and the various Courts of Military Review on direct review has been to analyze *de novo* the facts of each case in light of Supreme Court precedent. We see no reason why the same scope of legal review is not likewise appropriate for government appeals under Article 62. *See United States v. Singleton,* 702 F.2d 1159, 1162–63 (D.C.Cir. 1983); *United States v. Steed,* 674 F.2d 284 (4th Cir.) (en banc), *cert. denied,* 459 U.S. 829, 103 S.Ct. 67, 74 L.Ed.2d 68 (1982).

## II

The next question we must address is whether the facts as found by the military judge were sufficient to establish the service-connection of the charged offenses. The military judge articulated his rationale for concluding that they were not. The Court of Military Review, relying on *United States v. Solorio,* 21 M.J. 251 (C.M.A. 1986),* a decision not published at the time this motion was decided at trial, reached a contrary conclusion. Examination of the facts of this case in light of *Relford v. Commandant, supra,* lead us to conclude that these offenses were service-connected.

■ The first point we make in resolving the issue of service-connection is that this Court in its most recent decisions has not departed from the principles of analysis articulated in *O'Callahan v. Parker* and *Relford v. Commandant,* both *supra. See United States v. Scott,* 21 M.J. 345 (C.M.A. 1986); *United States v. Solorio, supra.* The accused's status as a servicemember is not sufficient in and of itself to confer jurisdiction over all his offenses no matter where and when committed. However, these recent decisions which have overruled earlier precedent from our Court do reflect an increased awareness and sensitivity to the realities of military life and operations. *See Noyd v. Bond,* 395 U.S.

683, 695, 89 S.Ct. 1876, 1883, 23 L.Ed.2d 631 (1969); *United States v. Trottier,* 9 M.J. 337 (C.M.A.1980). Accordingly, we reject appellant's initial contention that the Court of Military Review's reliance on our decision in *United States v. Solorio, supra,* was erroneous on this basis.

The second point we make in this regard is that neither *United States v. Scott* nor *United States v. Solorio,* both *supra,* dictate that appellant's offenses were service-connected. It is true that in each case we considered sexual abuse of a child who is a military dependent by a servicemember, all facts which can be found in appellant's case. *See Relford v. Commandant, supra.* However, in *Solorio,* a military relationship existed between the accused and the parents of the victim and in *Scott,* the accused was an officer. Neither factor exists in appellant's case. Nevertheless, we are convinced that other facts in this case, noted by the Court of Military Review, established that these offenses were service-connected.

■ A significant fact suggesting service-connection is the situs of the crimes in a housing area immediately adjacent to Fort Rucker. This trailer park was not property of the United States, but it was on the command referral list for off-post housing and 80% of the residents were military members and their dependents. The Supreme Court in both *O'Callahan v. Parker, supra,* 395 U.S. at 274 n. 19, 89 S.Ct. at 1691 n. 19, and in *Relford v. Commandant, supra* 401 U.S. at 368, 91 S.Ct. at 657, recognized the impact crimes committed by servicemembers against civilians " 'near' a military post" may have on military relations and military discipline. *See United States v. Scott, supra* at 347; *United States v. Lockwood,* 15 M.J. 1, 9 (C.M.A.1983). Accordingly, the more narrow "on post" approach of the military judge was unnecessarily restrictive.

---

* The Supreme Court granted certiorari in this case on June 16, 1986. ⸺ U.S. ⸺, 106 S.Ct.

2914, 91 L.Ed.2d 543.

■ In addition, we note that state authorities deferred prosecution on October 4, 1985, "[i]n light of the geographic locations of the victims and their families." In fact the families of both victims had moved to different states, Washington and Texas, as a result of regularly scheduled military orders or release from active duty. While *O'Callahan v. Parker, supra* 395 U.S. at 273, 89 S.Ct. at 1691, indicates that service-connection may not exist where civil courts are open, *Relford v. Commandant, supra,* suggests a contrary inference where these courts are not willing or readily available for prosecution. *Id.* 401 U.S. at 367–68, 91 S.Ct. at 656–57. Such an inference exists in this case where there is no evidence that military authorities intentionally contributed to this civilian decision not to prosecute. Initial deference to civilian authorities in making this decision cannot reasonably be equated to a determination by the military that the offenses are not service-connected.

■ A third factor we may consider is the adverse impact the crimes may have on the military mission. *See Relford v. Commandant, supra* at 367–68, 91 S.Ct. at 656–57; *United States v. Trottier, supra.* Sexual abuse of a child by a servicemember raises serious problems concerning that person's future performance in a military organization. *See United States v. Solorio, supra* at 256. More importantly, the impact of such crimes on the military performance of the parents of the victim, here an active-duty soldier serving overseas and a reservist on active duty for training, cannot be ignored. A breach of trust among soldiers is clearly deleterious to military morale and cohesiveness, and the military judge expressly recognized that the charged offenses constituted such a breach in the present case.

In conclusion, we note that all the factors indicating service-connection which are mentioned in *Relford v. Commandant,* and *O'Callahan v. Parker,* both *supra,* are not present in this case. Indeed, an argument can be made that not even a plurality of the factors exist in this case. However, the broader purpose of these decisions and our own is to establish as a matter of fact and reason a constitutional basis for court-martial jurisdiction. *See Schlesinger v. Councilman, supra.* A considered judgment, not mathematical calibration, is required. Although the price of service to one's country is high, these decisions do not dictate that it further include the unreasonable exposure of a soldier's family to unsanctioned crimes committed within the military community by fellow servicemembers. Accordingly, for all of the reasons stated above, we conclude these offenses were service-connected.

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge EVERETT concurs.

COX, Judge (concurring):

I concur without reservation. I write only to emphasize that modern strategic command policy for the maintenance of a strong national defense recognizes that the welfare of the military member's family is of vital importance in maintaining an armed force of good morale and discipline. Protection of a servicemember's family against crimes by another member is of vital importance, perhaps equal to or greater than that of protecting a military member from crime.

As the Honorable Caspar W. Weinberger, Secretary of Defense, so aptly stated in his remarks on the occasion of the retirement of Admiral James D. Watkins, the Chief of Naval Operations, on June 30, 1986:

> Successful military and naval careers are not built by individuals, but by families—families dedicated to America's defense—families willing to make sacrifices on behalf of our nation.

> \* \* \* \* \* \*

> They have endured the relentless call of duty—the separation, uncertainty, and loneliness that is so well known by military families whose loved ones have willingly sailed in harm's way for the welfare of the nation.