**UNITED STATES**

v.

**Airman First Class Matthew T. FENWRICK, United States Air Force.**

**Misc. Docket 2003–06.**

U.S. Air Force Court of Criminal Appeals.

24 Dec. 2003.

738

Appellate Counsel for the United States: Captain Stacey J. Vetter (argued), Colonel LeEllen Coacher and Lieutenant Colonel Robert V. Combs.

Appellate Counsel for Appellee: Captain James M. Winner (argued), Colonel Beverly B. Knott and Major Terry L. McElyea.

Before PRATT, ORR, and GENT, Appellate Military Judges.

## OPINION OF THE COURT

ORR, Judge:

The military judge in this case granted a defense motion to dismiss the charge and specifications because she found that the general court-martial convening authority (GCMCA) had systematically and improperly excluded lieutenants from service on the accused's court-martial panel. Thus, she concluded that the court-martial lacked jurisdiction. In response, the government submitted an appeal of her decision to this Court pursuant to Article 62, UCMJ, 10 U.S.C. § 862.

This Court initially granted review of the following issue:

WHETHER THE MILITARY JUDGE INCORRECTLY GRANTED THE DEFENSE MOTION TO DISMISS ALL CHARGES AND SPECIFICATIONS BASED ON A VIOLATION OF ARTICLE 25, UCMJ[, 10 U.S.C. § 825].

In response to the government's appeal, the appellee's counsel raised the following supplemental issue:

WHETHER THIS HONORABLE COURT'S JURISDICTION OVER THE GOVERNMENT'S ARTICLE 62 APPEAL IS LIMITED TO REVIEWING THE MILITARY JUDGE'S DISMISSAL OF THE CHARGE AND SPECIFICATIONS BASED UPON THE CONVENING AUTHORITY'S 30 JUNE 2003 COURT MEMBER SELECTION AND DOES NOT INCLUDE THE MILITARY JUDGE'S 3 AND 23 JUNE 2003 RULINGS THAT THE CONVENING AUTHORITY HAD SYSTEMATICALLY EXCLUDED LIEUTENANTS FROM THE COURT MEMBER SELECTION PROCESS.

We heard oral argument on the appeal on 6 Nov 03. While we accept most of the military judge's essential findings of fact, we disagree with her legal conclusions. We hold there was no improper selection of court members in violation of Article 25, UCMJ, and set aside the dismissal of the charge and specifications.

### I. Facts

The general court-martial of Airman First Class (A1C) Fenwrick began on 3 Jun 03 at Charleston Air Force Base (AFB), South Carolina. The allegations against him consisted of six specifications of larceny, in violation of Article 121, UCMJ, 10 U.S.C. § 921. On 27 May 03, the trial defense counsel alleged the improper selection of officer members to the court-martial panel. Specifically, the trial defense counsel complained of the systematic exclusion of junior officers or the unresolved appearance of the systematic exclusion of junior officers. Trial defense counsel asked the trial judge to order the GCMCA to appoint new officers to the court-martial panel. The military judge deferred ruling on the motion and arraigned A1C Fenwrick. He pled and was found guilty of five of the six specifications of larceny.

After the military judge announced her findings of guilt, she then returned to the defense motion regarding improper member selection. As stated earlier, prior to the court-martial, the trial defense counsel requested, by motion, that the trial judge order the GCMCA to appoint new officer members

because of the improper selection of officer members to the court-martial panel.

When the appellee's court-martial began on 3 Jun 03, the appellee stated that he wished to be tried by a panel of officer members and renewed his motion regarding improper member selection. In support of the motion, the trial defense counsel submitted the court member selection documents from the only other case that the GCMCA referred to a general court-martial at Charleston AFB, South Carolina. The GCMCA had not selected a lieutenant to serve in either case. The military judge was not convinced that two cases were sufficient to establish systematic exclusion of lieutenants, so she asked the trial counsel to provide copies of all the court-martial panels the GCMCA convened in fiscal year 2003.

The trial counsel provided the military judge with documents showing that including the appellee's case, the GCMCA had referred a total of 14 cases in the eight months of fiscal year 2003 to a general court-martial. In these 14 general courts-martial within that period, only one lieutenant was selected for service. As a result, the military judge informed trial counsel that the burden of proof had shifted to the government. After hearing argument on the motion, the military judge found that:

> [S]tatistically it has been demonstrated, whether its [sic] subconscious or whatever, that the general court-martial convening authority has a fixed policy basically. It's not written or anything, but [he] has systematically excluded lieutenants that are able to serve and appear to have been nominated as top qualified and most qualified by a special court-martial convening authority. A number of them and not just this one, but ones in a broad section under the command of this general court-martial convening authority. It's this court's view that rank has been used for systematic exclusion of qualified persons. Therefore, it's an impermissible basis for selection.

The court ordered the government to go back to the convening authority and ask him to select new officer court members. After discussing administrative matters, the military judge recessed the court-martial hearing until 11 Jun 03.

On 11 Jun 03, the court-martial reconvened. In an Article 39(a), UCMJ, 10 U.S.C. § 939(a) session, the trial counsel submitted a motion, including an affidavit from the convening authority, asking the military judge to reconsider her earlier ruling. The trial counsel attached convening orders of courts convened by the GCMCA covering the period of 31 May—12 Sep 02. These convening orders showed that the GCMCA had selected a lieutenant to serve in 6 of the 15 cases during the 31 May—12 Sep 02 time period. The military judge noted that based on the government's submissions, she had additional questions. In response, the trial counsel stated that the GCMCA would be available to testify on 17 Jun 03 in an effort to answer her questions. All parties agreed to reconvene on 17 Jun 03 and hear the testimony of the GCMCA before the judge ruled on the motion to reconsider.

On 17 Jun 03, the GCMCA testified. On direct examination, the GCMCA stated that he had been a special court-martial convening authority three times and a GCMCA for two and one-half years. He also described the selection process with respect to potential court-martial panel members. The GCMCA stated that his wing commanders nominate people and send their names to his staff judge advocate (SJA). The SJA then delivers the names to him, as the GCMCA, and he makes the final selection. He testified he selects potential panel members based on the selection criteria articulated in Article 25, UCMJ—age, education, training, experience, length of service, and judicial temperament. When asked how, using Article 25, UCMJ, criteria, he determined the best qualified panel members, the GCMCA responded as follows:

> I have a sheet that's prepared for me with the potential nominees from the Wing. That usually has a large list of names and people that are available, basically. And then there are some blanks on there for me to write names in. Then on the other side of the sheet there's a brief from the JAG that describes the court to refresh my memory. It tells me what we really are

looking for, as far as numbers go. Then I look through the brief sheets and pick the best qualified people out of the ones that are there. If I don't find what I really believe is the best, in other words from my experience, I know there are probably people at the Wing that are better qualified to serve than the ones I have, as far as all the items in the Article, I will ask the JAG to go back to the Wing and get more names. If that doesn't work, then I will get an Alpha sheet and pick for myself.

After questioning by both counsel, the military judge examined the GCMCA. She expressed her concern about the fact that out of 13 courts-martial in fiscal year 2003, although 2 lieutenants were selected by the GCMCA, none served. However, in fiscal year 2002 the GCMCA selected at least six lieutenants to serve on courts-martial. Additionally, the GCMCA's statement in his affidavit that he "rarely ... determined that an individual more junior in age, time in service, education and experience is better qualified to sit," was also troubling to her. After hearing argument from both sides, the court recessed for deliberations. On 23 Jun 03, the court reconvened and the military judge granted the defense motion for appropriate relief and made findings of fact on the record. Then, she ordered the GCMCA to select new members for the panel, free from systematic exclusion of lieutenants. The court gave the GCMCA 90 days to comply with its ruling.

On 30 Jun 03, the GCMCA executed Special Order AC-34. In this order, the GCMCA selected nine members to serve on the new panel, none of which were lieutenants. The trial defense counsel renewed their motion to dismiss and the military judge made the following findings of fact and conclusions of law, and then ruled on the motion:

### Findings of Fact[1]

1. On 29 April 2003, the defense received a copy of all documents sent from 437th AW/JA and 437 AW/CC to, Maj Gen George N. Williams, the General Court-Martial Convening Authority (GCMCA), regarding referral of the charges against A1C Fenwrick. The GCMCA referred the case to a General Court Martial and selected four (4) Lt Colonels (O–5), two (2) Majors (O–4), two (2) Captains (O–3), and zero (0) 1st Lieutenants, and zero (0) 2nd Lieutenant[s] to serve on the accused's court-martial panel.

2. On 27 May 2003, the defense filed a motion for selection of new court-martial members based upon improper selection of the original court-martial members on 29 Apr 03. (App. Ex II)[.] In summary, the motion alleged systematic exclusion by the GCMCA of officers below the rank of Captain. The government response to the motion was filed on 29 May 2003. (App.Ex. III)[.]

3. On 3 Jun 2003, the court-martial was convened, the accused was arraigned and pleas were entered after two motions were raised by the defense. Argument on both motions was deferred until after the pleas were entered an[d] accepted by the court. After the pleas were accepted, argument and evidence on the motions was presented. The first motion was based upon multiplicity and is not relevant to the issue at hand. The second motion addressed the issue now in question.

4. After presentation of argument and evidence regarding the selection of officer court members was completed, the court ruled on 3 Jun 2003, that the GCMCA systematically excluded qualified lieutenants from court-martial service based upon their rank. The court ordered the government to go back to the GCMCA to select new officer court members. The court was recessed.

5. On 9 June 2003, the government filed a motion for reconsideration of the court's ruling on 3 Jun 03. (App. Ex VII)[.] The defense responded to the motion on 9 Jun 2003. (App. Ex IX). The court-martial reconvened on 11 Jun 03. Further evidence in addition to the motions was submitted to the court and marked as Appel-

---

1. In addition to making her own findings of fact, the military judge adopted as fact paragraphs 1–8 of the trial defense counsel's motion to dismiss.

We have incorporated both documents as the military judge's findings of fact and renumbered them accordingly.

late Exhibits XIII and X. Additionally, the government requested that it be allowed to call the GCMCA as a witness in support of its motion for reconsideration. The court granted the request and recessed the proceedings.

6. The court-martial was reconvened on 17 Jun 03. At this time further documentary evidence on the motion was presented by the government, Appellate Exhibits XI and XII. Next the GCMCA, Maj Gen George N. Williams, was called as a witness by the government. After his testimony, the court heard argument. The court recessed to deliberate on 17 Jun 03[.]

7. The [A]rticle 39(a)[, UCMJ] session was reconvened on 23 Jun 03. The court stated its findings of fact and conclusions of law and then granted the defense's original motion for relief. In doing so the court ordered the GCMCA authority to select new members for the panel that was free of systematic exclusion of lieutenants. The court gave the GCMCA 90 days to comply with the court's ruling. The session was adjourned on 23 Jun 03.

8. On 30 Jun 03, the GCMCA executed Special Order AC–34. In this order, the GCMCA selected nine officer members to serve on the panel for this case. The rank of the members selected is as follows: 2 Lt Colonels, 4 Majors, and 3 Captains. The SPCMCA [special court-martial convening authority] sent the GCMCA a list of 15 potential court members whose rank breaks down as follows: two (2) Lt Colonels, four (4) Majors, six (6) Captains and three (3) 1st Lieutenants. The members that were selected by the GCMCA were done so in a "firewall" fashion starting at the highest rank and going down, stopping before any selection of Lieutenants.

9. The defense has made this motion to dismiss prior to the expiration of the 90 days the court gave the GCMCA to comply with the court's order not to systematically exclude lieutenants from A1C Fenwrick's court-martial panel. However, after the GCMCA executed Special Order AC–34 on 30 Jun 03, this issue became ripe for the court to make a ruling upon the defense motion.

10. Although Major General Williams testified that he always follows the same procedures in court-martial panel selection (ROT, p 83) and has not changed anything in his selection criteria (ROT, p 131), the court-martial panel selection documents reveal a clear change in his selection of panel members since late October 2002. I found his testimony to be inconsistent with the documentary evidence presented to the court. Additionally, even when lieutenants with prior enlisted service, such as Lt Apholz, an MPF [Military Personnel Flight] Section Commander, nearly 33 years old, with over 13 years of service, are forwarded to him for possible inclusion in a court-martial panel, no lieutenant has been selected by Major General Williams to sit on a court-martial panel since late October 2002. It is not the court's job to second guess every selection made by a CA [convening authority] or to substitute its judgment for that of the GCMCA; however, when clear evidence is brought forward by the defense that questions the GCMCA's motives or selection process, it should be addressed by the court.

11. When Major General Williams explained what he meant by the language in his affidavit "rarely have I determined that an individual more junior in age, time in service, education and experience is better qualified to sit," (ROT, p 134), Lt Apholz is clearly one example of a lieutenant who would fit into the better qualified category then [sic] captains selected by this GCMCA over such lieutenants. There are other examples of such lieutenants as non-selects. As I noted during my findings on the record, "rarely" selected has turned into never selected since late October 2002.

12. Major General Williams mentioned in his affidavit, as well as testified when questioned by trial counsel, that he had not subconsciously excluded lieutenants from serving as court panel members. Not to get bogged down into the depths of psychology and it's [sic] Freudian theories, but Webster defines "subconscious" as "occurring without conscious perception on the part of the individual."

13. This court clearly cannot look into the mind of the GCMCA, but can evaluate his testimony and the circumstantial evidence presented during trial that either supports or contradicts that testimony. I have thoroughly reviewed and evaluated the GCMCA's testimony and the circumstantial evidence presented to this court. Whether it is conscious or subconscious, this court finds that the GCMCA has continued to systematically exclude qualified lieutenants from court-martial service based on their rank.

## Conclusions of Law

14. Members may not be selected solely on the basis of their rank. Once the defense establishes improper exclusion of qualified personnel from the court-martial selection process, the government must show by competent evidence that no impropriety occurred when selecting the accused's court-martial members. The government has failed to meet its burden. The GCMCA in this case has systematically and improperly excluded qualified lieutenants from court-martial service based upon their rank. Further the GCMCA has failed to comply with the court's order to not systematically exclude qualified lieutenants from the accused's officer court-martial panel.

15. It is apparent to this court that the GCMCA does not intend to comply with this court's order, so the defense motion is ripe for ruling by this court.

## Ruling

WHEREFORE, the Defense Motion to Dismiss the charges and specifications for lack of jurisdiction because of the systematic and improper exclusion of qualified lieutenants from service on the accused's court-martial panel is GRANTED.

In granting the defense motion on 28 Aug 03, the military judge dismissed the case with prejudice. In accordance with Rule for Courts-Martial (R.C.M.) 908, on 28 Aug 03, the trial counsel notified the military judge of the government's intent to appeal her decision under Article 62, UCMJ. That appeal was timely filed and is now properly before us for decision.

## II. Jurisdiction and Scope of Review

The United States may appeal an "order or ruling of the military judge which terminates the proceedings with respect to a charge or specification" in cases in which a punitive discharge may be adjudged. Article 62(a)(1)(A), UCMJ, 10 U.S.C. § 862(a)(1)(A). Each of the dismissed specifications in this case carries a maximum punishment that includes a punitive discharge. *Manual for Courts–Martial, United States (MCM)*, Part IV, ¶¶ 46e(1)(a), (c) (2002 ed.).

■ Despite our fact-finding powers under Article 66(c), UCMJ, 10 U.S.C. § 866(c), in ruling on issues under Article 62, UCMJ, we "may act only with respect to matters of law." Article 62(b), UCMJ, 10 U.S.C. § 862(b). On matters of fact, we are bound by the military judge's factual determinations unless they are unsupported by the record or clearly erroneous. *United States v. Burris*, 21 M.J. 140, 144 (C.M.A.1985). *See, e.g., United States v. Pollard*, 27 M.J. 376 (C.M.A. 1989) (affirming the Coast Guard Court of Military Review's reversal of the trial judge's ruling and remanding the case to determine if the technical violations rendered accused's urinalysis unreliable as a matter of fact). "Nonetheless, in entering a finding of fact, the military judge must rely on evidence of record which fairly supports that finding; in the absence of any such evidence, the finding is error as a matter of law." *United States v. Bradford*, 25 M.J. 181, 184 (C.M.A.1987). "The courts may make a de novo ad hoc judgment on the meaning of relevant facts when dealing with constitutional issues." 2 Francis A. Gilligan & Fredric I. Lederer, *Court–Martial Procedure* § 25–83.00 (1991 ed.) (citing *United States v. Abell*, 23 M.J. 99, 102–03 (C.M.A.1986)). "Similarly, the appellate courts normally should have the power to reverse when the trial judge misunderstood the legal significance of a fact found by the judge when that mis-understanding causes an error as to the court's ultimate finding." *Id.* (citing *United States v. Shakur*, 817 F.2d 189 (2d Cir.1987)).

### III. Law and Analysis

While we accept most of the military judge's findings of fact, we disagree with her conclusions of law. Article 25, UCMJ, gives a convening authority great discretion to select members to serve on court panels. Specifically, Article 25(d)(2), UCMJ, states in pertinent part: "When convening a court-martial, the convening authority shall detail as members thereof such members of the armed forces as, in his opinion, are best qualified for the duty by reason of age, education, training, experience, length of service, and judicial temperament."

 Even with such latitude, a convening authority's discretion is not unfettered. "While the military defendant does not enjoy a Sixth Amendment right to a trial by impartial jury, he or she does have a right to members who are fair and impartial." *United States v. Kirkland*, 53 M.J. 22, 24 (C.A.A.F.2000) (internal citations omitted) (citing *United States v. Roland*, 50 M.J. 66, 68 (C.A.A.F.1999)). Clearly, "members may not be selected solely on the basis of their rank." *Roland*, 50 M.J. at 68 (citing *United States v. Nixon*, 33 M.J. 433 (C.M.A.1991)). On a motion for selection of new court-martial members based upon improper exclusion of qualified members, the defense has the burden of "establishing the improper exclusion of qualified personnel from the selection process." *Kirkland*, 53 M.J. at 24 (citing *Roland*, 50 M.J. at 69). Once such exclusion is established, "the Government must show by competent evidence that no impropriety occurred when selecting ... members." *Id.*

With respect to the instant case, the military judge found that the defense had met their burden of establishing the improper exclusion of qualified members from the court-martial panel. When she was not satisfied that the government had shown by competent evidence that no impropriety occurred, she held that the GCMCA systematically excluded lieutenants based on rank. In her analysis, she focused on the fact that the GCMCA had only picked one lieutenant to sit on a court-martial panel for fiscal year 2003. However, in determining whether members for a court-martial panel are improperly selected, our superior court has always focused its review on the process of putting together lists of nominees from the special court-martial convening authority or the GCMCA. *See Kirkland; Roland; United States v. Bertie*, 50 M.J. 489 (C.A.A.F. 1999); *United States v. White*, 48 M.J. 251 (C.A.A.F.1998). In reviewing the process of selecting nominees in this case, the military judge found no evidence of impropriety in the nomination process. Indeed, the military judge stated that the special court-martial convening authorities have sent the GCMCA "ample choices of lieutenants for selection." In essence, she agreed that there was nothing improper with the nomination process. The crux of her ruling deals with the statistics showing the actual number of lieutenants selected. The source of her authority appears to have come from the *Roland* case.

In *Roland* our superior court found that while there was no selection of members below the grade of E–5, the defense had not carried its burden to show that there was unlawful command influence. *Roland*, 50 M.J. at 69. In that case, there were even problems with the selection paperwork because it did not mention E–4s. *Id.* at 67. The convening authority testified that he knew he could select E–4s if he wanted to, thus the judge ruled that the defense had not met its burden of proof because there was no showing of bad faith by the SJA or GCMCA, nor was any statistical evidence introduced from which one may draw an improper inference in the court selection process. *Id.* at 67–68. Conversely in this case, the military judge found the defense had met its burden of establishing improper exclusion in the selection process even in the absence of a problem in the nomination process and a lack of evidence of unlawful command influence. We disagree with the military judge's conclusion.

In this case, the process was correct and the convening authority denied any systematic exclusion. The only remaining issue is whether the statistics are sufficient to infer that there was a systematic exclusion of lieutenants. We find they do not support that conclusion.

 Even if we assume that the defense has met its burden, we believe that the gov-

ernment established by competent evidence that no impropriety occurred. The government presented evidence that the GCMCA was aware of, and applied, the Article 25(d)(2), UCMJ, criteria when selecting panel members. The record also indicates that the GCMCA selected lieutenants at least six times in fiscal year 2002 and at least once in fiscal year 2003. It was also apparent from the record that certain ranks were not excluded from the list of nominees presented to the GCMCA. Article 25, UCMJ, does not require convening authorities to select members from every rank senior to that of the accused. Indeed, as was done in this case, this Court has recognized, that it is not improper, during the selection process, for a convening authority to look first to officers and enlisted members senior in rank because they are more likely to be the best qualified under Article 25, UCMJ. *United States v. Townsend,* 12 M.J. 861 (A.F.C.M.R.1981). Although junior officers and lower enlisted members must not be systematically excluded from court-martial panels, the GCMCA is required to select members who, "in his opinion" are the best qualified. Article 25(d)(2), UCMJ. This is a subjective determination. With respect to the case before us, junior ranking officers were considered by the GCMCA. Not only did the GCMCA sign an affidavit and testify under oath that he considered junior ranking officers, the documentary evidence reflects that he had selected them in several other trials. Moreover, the GCMCA stated on his 30 Jun 03 convening order that "In full accordance with the criteria of Article 25, UCMJ, I have considered all qualified individuals and have not categorically excluded anyone for any reason prior to their selection." Based upon these facts we do not hesitate to hold that this GCMCA has not systematically excluded lieutenants.

While a military judge may rely upon statistical evidence to discern a "subconscious" desire by the convening authority to improperly exclude certain grades, such statistical evidence must clearly indicate such an exclusion. Based primarily on statistics, this military judge made a specific finding of fact that this GCMCA "has continued to systematically exclude qualified lieutenants from court-martial service based on their rank." We find that the evidence of record simply does not support this finding. Therefore, we find that this finding of fact was clearly erroneous. Since the military judge then reached a legal conclusion that the GCMCA in this case systematically and improperly excluded lieutenants, we hold that this was error.

### IV. Supplemental Issue

■ The appellee's counsel asserts that this Court may not consider the military judge's 3 and 23 Jun 03 rulings because the government's appeal is untimely. Specifically, Article 62, UCMJ, prohibits this Court from acting upon an appeal from the government unless the trial counsel provides written notice to the military judge of the government's intent to appeal the military judge's ruling within 72 hours of the order or ruling. Article 62(a)(1)(A), UCMJ, states that the United States may appeal "[a]n order or ruling of the military judge which terminates the proceedings with respect to a charge or specification." Citing *United States v. True,* 28 M.J. 1, 2 (C.M.A.1989), the appellee contends that the military judge's 3 and 23 Jun 03 rulings were the functional equivalent of a "ruling of the military judge which terminates the proceedings." In this case, the trial counsel provided the military judge with written notice of the government's intent to appeal the last ruling on 28 Aug 03. However, this notice was well beyond the 72 hour period to be considered timely for the military judge's earlier rulings. Therefore, the appellee asserts that this Court does not have jurisdiction to review the two earlier rulings. We disagree.

We are not convinced that the military judge's rulings on 3 and 23 Jun 03 were final orders. The facts of this case are clearly distinguishable from the facts in *True.* In the *True* case, the government counsel stated at trial that the convening authority would not comply with the court's order, thereby putting the proceedings in an intractable posture. *Id.* at 2. At the time of the 3 and 23 Jun 03 rulings in this case, an intractable situation had not yet occurred. While both of the orders directed the convening authority to select new members, they did not terminate the proceedings with respect to the charge or a specification. Unlike in *True,*

the government complied with the military judge's orders. Additionally, it was clear by the actions of the military judge and both parties that they did not consider the orders to be final. In fact, after issuing her 23 Jun 03 order, the military judge gave the convening authority 90 days to comply with it. She then stated that if the convening authority failed to comply, she then would consider a defense motion to dismiss the offenses. As a result, the military judge's earlier orders were not the functional equivalent of a ruling that terminated the proceedings. Once she determined that the convening authority did not comply with her 28 Aug 03 order, she granted the defense motion to dismiss the charge and specifications with prejudice. While only the 28 Aug 03 order is a final ruling within the context of Article 62, UCMJ, the facts and rulings of this case are so intertwined that we must consider all three of the military judge's orders to properly resolve this case. Therefore, we find that the appellee's motion to limit our review to the 28 Aug 03 ruling alone is without merit.

### V. Ruling

We hold that there was no systematic exclusion of qualified lieutenants by the convening authority in this case, and thus no violation of Article 25, UCMJ. Therefore, the appeal by the United States pursuant to Article 62, UCMJ, is granted. The decision of the military judge dismissing the charge and specifications for a lack of jurisdiction is set aside. The case is remanded to the trial court for further proceedings.

PRATT, Chief Judge (concurring):

I concur but write separately to reiterate the importance of affording convening authorities the discretion properly granted to them by Article 25, UCMJ.

It should come as no surprise that, in applying the criteria enumerated in Article 25, UCMJ—age, education, training, experience, length of service, and judicial temperament—a convening authority will often look first to officers (and enlisted members, when requested) who are senior in rank. *See United States v. Upshaw*, 49 M.J. 111 (C.A.A.F.1998) (citing *United States v. Craw-*

*ford*, 35 C.M.R. 3, 12, 1964 WL 4914 (C.M.A. 1964); *United States v. Daigle*, 1 M.J. 139 (C.M.A.1975); *United States v. Greene*, 43 C.M.R. 72, 1970 WL 7433 (C.M.A.1970)); *Townsend*. We need not shy away from that reality—surely Congress must have envisioned that result when they chose to highlight those particular factors in the statute. Nevertheless, it is also well recognized that rank is not an appropriate selection factor or "shortcut" in applying Article 25, UCMJ, criteria. *Nixon; United States v. Benson*, 48 M.J. 734, 740 (A.F.Ct.Crim.App.1998). Thus, a jurisdictional flaw emerges upon a showing that a particular rank or ranks is being systematically or categorically excluded, either by the GCMCA or by persons who manage the earlier stages of the court member selection process. *Roland.* In this case, there is evidence of neither.

I note that the defense counsel, in his original motion, relied upon only one other convening order to assert that the GCMCA was engaged in *systematically* excluding lieutenants. I credit the military judge for expanding the scope of the examination to a broader period of time, but I cannot applaud the conclusions she drew from the evidence that emerged. Looking at cases referred by this GCMCA in the eight months of the then-current fiscal year, the military judge concluded that lieutenants were being systematically excluded from the court-martial process. This conclusion was somewhat questionable when the fiscal year evidence reflected at least one case where a lieutenant was indeed selected by this GCMCA. That selection alone should have given the military judge pause in concluding that the GCMCA was engaged in *systematic exclusion.* Then, when the trial counsel expanded the evidentiary landscape a bit further—now including the 12 months prior to this trial— we see that this same GCMCA had selected lieutenants to serve on court panels on at least seven different occasions.

This expanded data should have dealt a fitting deathblow to any claim of systematic exclusion. Ordinarily, cases evincing systematic exclusion, or even claiming an appearance thereof, involve a restrictive flaw in the process by which members are nominated to

the convening authority or a history of blanket exclusion of certain ranks by the convening authority himself. *United States v. McClain,* 22 M.J. 124 (C.M.A.1986); *Daigle; Greene; Benson.* In the present case, we have clear evidence of a process which does not exclude lieutenants as nominees for court member duty and a GCMCA who has a clear "track record" of willingness to appoint members of that rank when he judges it appropriate.

Instead of crediting the GCMCA with his demonstrated record, the military judge interpreted the statistical data as evidence that, in the latter portion of his tenure as GCMCA, he must necessarily have undergone a change in his selection "philosophy" and begun a pattern of systematic exclusion. There is simply no evidence of such a change or, notably, of any ill motive on the part of this GCMCA. Merely showing a disproportionate selection of ranks is not enough to establish "systematic exclusion." *Benson,* 48 M.J. at 740. This is especially true when, as in this case, there is clear evidence that the convening authority has appointed lieutenants on several occasions in the recent past.

Even if the statistical data were interpreted to give rise to an appearance of impropriety, there is appropriate precedent for crediting the explicit testimony of the convening authority on the issue of his compliance with Article 25, UCMJ. *Nixon,* 33 M.J. at 435. In this case, as the majority opinion notes, this GCMCA not only provided an affidavit attesting to his lack of systematic exclusion, but he also subjected himself to the rigors of testimony before the trial court, with cross-examination by the defense counsel and pointed probing by the military judge. That testimony, rather than uncovering a motive, a hidden intent, or any change in the GCMCA's attitude, reflected instead a surprisingly clear understanding of his responsibilities under Article 25, UCMJ, and a resolute intent to fulfill them in good faith.

Unfortunately, given the nature of the Article 25, UCMJ, criteria, it is easy to allege that a convening authority is improperly using rank as a selection factor. Certainly, when a reasonable showing can be made that improper selection may have occurred, it is entirely appropriate and important that the burden shift to the government to demonstrate that no impropriety took place. *Roland,* 50 M.J. at 69. By the same token, however, this threshold showing should not be deemed met lightly. And once met, the government's burden should not be unreasonably severe. In the absence of a demonstrable showing of systematic or categorical exclusion, it is important that the convening authority's exercise of discretion and judgment be recognized and respected. Our system will quickly enter a hopeless morass if we lightly require our convening authorities to explain and justify their rationale for selecting one member over another.

In view of the evidence available in this case, including both statistical data and the testimony of the convening authority, the military judge's legal conclusion that this GCMCA was engaged in the systematic exclusion of lieutenants is unwarranted. Thus, in my view, the military judge's ruling invades the prerogative Congress entrusted to the convening authority through Article 25, UCMJ, and must be set aside.